[No. S135263. Nov. 30, 2006.]

IN RE JAIME P., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
JAIME P., Defendant and Appellant.

## COUNSEL

Diana M. Teran, under appointment by the Supreme Court, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Martin S. Kaye and Ronald E. Niver, Deputy Attorneys General, for Plaintiff and Respondent.

Steve Cooley, District Attorney (Los Angeles), Lael R. Rubin, Head Deputy District Attorney, Brentford J. Ferreira and Phyllis C. Asayama, Deputy District Attorneys, as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

**CHIN, J.**—In this case, we consider the continued vitality of *In re Tyrell J.* (1994) 8 Cal.4th 68 [32 Cal.Rptr.2d 33, 876 P.2d 519] (*Tyrell J.*), upholding a warrantless search of a juvenile probationer by an officer who lacked reasonable suspicion of any criminal activity and was unaware that the juvenile had consented to such a search as a condition of his probation. We conclude that developments subsequent to *Tyrell J.*, including the recent high court decision in *Samson v. California* (2006) 547 U.S. 843 [165 L.Ed.2d 250, 126 S.Ct. 2193] (*Samson*), our own decision in *People v. Sanders* (2003) 31 Cal.4th 318 [2 Cal.Rptr.3d 630, 73 P.3d 496] (*Sanders*), and lower court cases and scholarly comment critical of *Tyrell J.*, have convinced us that it should be overruled.

### FACTS

The following uncontradicted facts are taken from the Court of Appeal opinion in this case. Minor Jaime P. appeals from the juvenile court's denial

of his motion to suppress evidence and the court's sustaining of the allegations that he drove a vehicle without a license (Veh. Code, § 12500, subd. (a)) and carried a loaded firearm (Pen. Code, § 12031, subd. (a)(1); further statutory references are to the Penal Code unless otherwise indicated), while associated with a criminal street gang (§ 186.22, subd. (b)(1).)

On April 27, 2004, Fairfield Police Officer Moody detained minor and three other persons after observing what he believed to be traffic violations. The officer first observed the driver of the car turn corners without signaling and then pull over to the curb, again without signaling. (The People conceded these violations standing alone would not have justified a vehicle stop, as no other vehicles were affected; see Veh. Code, § 22107.)

Moody pulled in behind the car and saw two passengers exit. The officer detained and questioned them, testifying later that he did so because a home on the block had recently been the target of gang violence. Minor, who was driving the vehicle, and another person remained seated in the front seat. After a backup officer arrived, Moody turned his attention to the individuals remaining in the car. Minor could provide only a school identification and said he did not have a driver's license.

While talking to minor, Officer Moody observed a box of ammunition in plain view on the front floorboard. Moody then ordered minor and his passenger to exit the vehicle and patsearched all four individuals. The only weapon located at that time was a padlock tied to a bandana, found on one of the passengers who initially exited the vehicle. After determining that none of the four individuals had a valid driver's license, Moody called a tow truck to remove and store the car. An inventory search of the vehicle revealed a loaded .44-caliber handgun beneath the rear passenger seat.

Minor was arrested and, after being advised of his constitutional rights at the police station, he admitted that he was a member of the Calle San Marco (CSM) gang. He indicated that he had given a ride to the other three occupants of the vehicle and that one of them had produced the gun, which they passed around but did not take out of its holster. At the jurisdictional hearing, Detective Golez testified that CSM is a gang of 150–200 members in Fairfield and is a subset of the Sureño gang; its members are "foot soldiers" of the Mexican Mafia, a prison gang. Golez indicated that she believed minor to be an active member of CSM, based upon his admission, his associates, his style of dress, and graffiti found at his residence.

Based upon this and other evidence not relevant here, the juvenile court denied minor's motion to suppress the firearm, relying upon minor's probation search condition to justify the officer's action. The record shows minor

was on probation with the condition, among others, that he submit his person and property, including his vehicle and residence, to a warrantless search and seizure by any peace officer at any time, with or without probable cause. The juvenile court then sustained the delinquency petition, finding true the allegations that minor drove a vehicle without a license, was a gang member and carried a loaded firearm. The juvenile court continued minor as a ward of the court and placed him on further probation.

Among other issues, minor contended on appeal that the juvenile court erred by denying his motion to suppress. The Court of Appeal, acknowledging the scholarly criticism of *Tyrell J., supra*, 8 Cal.4th 68, but deeming itself "bound by its precedent," rejected the contention and reached the remaining appellate issues. We will reverse.

### DISCUSSION

■ Does a juvenile's probationary search condition justify an otherwise illegal search and seizure if the officers conducting the search are then unaware that the juvenile is on probation and subject to the search condition? Our decision in *Tyrell J., supra*, 8 Cal.4th 68, held that the officers' prior knowledge of the probation condition was not necessary in a juvenile case. We reasoned, in part, that "imposing a strict requirement that the searching officer must always have advance knowledge of the search condition would be *inconsistent with the special needs of the juvenile probation scheme*. That scheme embraces a goal of rehabilitating youngsters who have transgressed the law, a goal that is arguably stronger than in the adult context. [Citations.] . . . [T]he condition of probation permitting police . . . to conduct warrantless searches is imposed by the juvenile court to serve the important goal of deterring future misconduct." (*Tyrell J., supra*, 8 Cal.4th at pp. 86–87, italics added.) We also relied upon the reduced expectation of privacy that probationers, as a general matter, hold, and reasoned that suppressing the evidence under the circumstances presented would not further the purpose of the exclusionary rule. (*Tyrell J., supra*, 8 Cal.4th at pp. 86, 89.)

Justice Kennard dissented in *Tyrell J.* (*Tyrell J., supra*, 8 Cal.4th 68, 90 (dis. opn. of Kennard, J.).) Her dissent found no significant differences in the purposes for, and rationale supporting, search conditions imposed on adult parolees (see *In re Martinez* (1970) 1 Cal.3d 641, 646 [83 Cal.Rptr. 382, 463 P.2d 734]; *People v. Gallegos* (1964) 62 Cal.2d 176, 178 [41 Cal.Rptr. 590, 397 P.2d 174]), and those imposed on juvenile probationers. (*Tyrell J., supra*, 8 Cal.4th at p. 96 (dis. opn. of Kennard, J.).) In the dissent's view, the holdings in *Gallegos* and *Martinez*, "that a search may not be justified by a parole search condition of which the searching officer is unaware, should be dispositive of this case." (*Ibid.*)

■ We recently considered whether prior knowledge of a search condition is required to uphold an otherwise unlawful search of the residence of an *adult parolee*, concluding the search "may not be justified by the circumstance that the suspect was subject to a search condition of which the law enforcement officers were unaware when the search was conducted." (*Sanders, supra*, 31 Cal.4th at p. 335, fn. omitted.) This is so, we reasoned, because "whether a search is reasonable must be determined based upon the circumstances *known to the officer when the search is conducted.*" (*Id.* at pp. 332, 334, italics added.) *Sanders* explained that the "primary purpose of the exclusionary rule [is] to deter police misconduct" (*id.* at p. 332), and that to admit evidence seized during a search that the officer had no reason to believe was lawful, merely because a search condition had been imposed, "would legitimize unlawful police conduct" (*id.* at p. 335).

Much of the foregoing *Sanders* analysis would seemingly apply to searches of juvenile probationers. Although *Sanders* noted that a number of commentators had criticized our ruling in *Tyrell J.*, nonetheless "[b]ecause this case does not involve a juvenile, we need not, and do not, decide" whether the reasoning of *Tyrell J.* is correct. (*Sanders, supra*, 31 Cal.4th at p. 335, fn. 5.) We will address that question here.

■ We have recognized that reexamination of precedent may become necessary when subsequent developments indicate an earlier decision was unsound, or has become ripe for reconsideration. (E.g., *Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 296–297 [250 Cal.Rptr. 116, 758 P.2d 58], and cases cited.) As we explain below, developments occurring subsequent to our *Tyrell J.* decision convince us that it was incorrectly decided, and that it has generated and will continue to generate inequitable and legally unjustified results unless we overrule it.

As noted, *Tyrell J.* justified its holding on three broad grounds: (1) "the special needs of the juvenile probation scheme" (*Tyrell J., supra*, 8 Cal.4th at p. 87); (2) "the important goal of deterring future misconduct" (*ibid.*); and (3) the reduced expectation of privacy that probationers, as a general matter, hold (*id.* at pp. 83–86). In combination, these three factors convinced us that suppressing the evidence under the circumstances presented in that case would not further the purpose of the exclusionary rule. (*Id.* at p. 89.) But our subsequent decision in *Sanders*, coupled with the analysis in another appellate case, *People v. Hester* (2004) 119 Cal.App.4th 376, 398–405 [14 Cal.Rptr.3d 377] (*Hester*), demonstrate that these grounds may no longer be entitled to much weight.

■ In *Sanders*, we relied on *In re Martinez, supra*, 1 Cal.3d 641, and its "rule that whether a search is reasonable must be determined *based upon the*

*circumstances known to the officer when the search is conducted* and is consistent with the primary purpose of the exclusionary rule—to deter police misconduct." (*Sanders, supra,* 31 Cal.4th at p. 332, italics added.) An officer acting in reliance on a search condition may act reasonably, even in the absence of any particularized suspicion of criminal activity, and such a search does not violate the suspect's reasonable expectation of privacy. (See *People v. Reyes* (1998) 19 Cal.4th 743, 754 [80 Cal.Rptr.2d 734, 968 P.2d 445] [parole search condition].)

■ With respect to the reasonable expectation of privacy of one subject to a search condition, *Sanders* observed that "[a] parolee's expectation of privacy certainly is diminished, but it is not eliminated" (*Sanders, supra,* 31 Cal.4th at p. 332, fn. omitted), and "whether the parolee has a reasonable expectation of privacy is inextricably linked to whether the search was reasonable" (*id.* at p. 333). *Sanders* continued by observing that despite a "diminished expectation of privacy" held by one subject to a search condition, the search cannot be justified if the officer is unaware of the condition. (*Ibid.*) Thus, in *Sanders*'s view, despite being subject to a search condition, a person retains a reasonable expectation the officers will not undertake a random search supported by neither reasonable suspicion of criminal activity nor advance knowledge of the search condition. (*Ibid.*; see also *Tyrell J., supra,* 8 Cal.4th at pp. 96–97 (dis. opn. of Kennard, J.).)

As for deterrence of criminal acts, *Sanders* reviewed the decision in *United States v. Knights* (2001) 534 U.S. 112 [151 L.Ed.2d 497, 122 S.Ct. 587], allowing a search of an adult probationer's house by an officer *aware* of the suspect's search condition. *Sanders* observed that *Knights* would not extend to the situation in *Sanders*, stating, "But if an officer is unaware that a suspect is on probation and subject to a search condition, the search is not justified by the state's interest in supervising probationers *or by the concern that probationers are more likely to commit criminal acts.*" (*Sanders, supra,* 31 Cal.4th at p. 333, italics added.) As the dissent in *Tyrell J.* observed, requiring the officers be aware of the search condition would not itself affect the goal of deterrence: The very existence of a probation search condition, whether for adults or juveniles, should deter further criminal acts, and that deterrent effect would not be eroded merely by requiring that searching officers be aware of that condition. (See *Tyrell J., supra,* 8 Cal.4th at pp. 96–97.)

What of *Tyrell J.*'s reliance on "the special needs of the juvenile probation scheme"? (*Tyrell J., supra,* 8 Cal.4th at p. 87.) In *Sanders,* we left open the question whether such special needs indeed exist and would justify *Tyrell J.*'s holding. (*Sanders, supra,* 31 Cal.4th at p. 335, fn. 5.) Justice Kennard's dissent in *Tyrell J.,* doubted the validity of the majority's reliance on such special needs, observing that in that case, as here, the search was conducted

by a police officer acting without knowledge of the search condition, rather than by a probation officer having an ongoing supervisory relationship with the probationer, whose welfare he or she sought to promote. (*Tyrell J., supra*, 8 Cal.4th at p. 92 (dis. opn. of Kennard, J.).) In other words, the dissent questioned whether the special needs of the juvenile probation scheme could be promoted by allowing a police search not premised on prior knowledge of that condition.

Before addressing further the "special needs" rationale, we note that *Sanders* identified a substantial body of scholarly commentary critical of our *Tyrell J.* analysis. (See *Sanders, supra*, 31 Cal.4th at pp. 328–329.) The gist of these articles is that *Tyrell J.* eroded the Fourth Amendment protections for juveniles by giving police an incentive to conduct a warrantless search, unsupported by reasonable suspicion of criminal conduct, in the bare hope that a search condition may exist.

Published opinions of various Courts of Appeal, recognizing the inherent analytical inconsistencies between *Tyrell J.* and *Sanders*, have applied the reasoning of *Sanders* to cases involving adult probationers. (See, e.g., *In re Joshua J.* (2005) 129 Cal.App.4th 359, 363 [28 Cal.Rptr.3d 502] [observing that *Sanders* "dismantled the foundation and cornerstones of *Tyrell J.*"]; *Myers v. Superior Court* (2004) 124 Cal.App.4th 1247, 1251–1256 [22 Cal.Rptr.3d 369]; *People v. Hoeninghaus* (2004) 120 Cal.App.4th 1180, 1191 [16 Cal.Rptr.3d 258] ["the court has changed the analysis it uses to determine the propriety of a warrantless search in cases involving a search condition," and has "abandoned *Tyrell J.*'s analysis"]; *People v. Lazalde* (2004) 120 Cal.App.4th 858, 863–864 [15 Cal.Rptr.3d 904]; *Hester, supra*, 119 Cal.App.4th at pp. 397–398 [applying *Sanders* rationale to both adult and juvenile offenders, and confining *Tyrell J.* to its facts]; *People v. Bowers* (2004) 117 Cal.App.4th 1261, 1268–1270 [13 Cal.Rptr.3d 15] [noting *Sanders*'s disapproval of most of *Tyrell J.*'s rationale].)

In *Hester*, police acting without a warrant or reasonable suspicion stopped a vehicle possibly involved in criminal street gang activity. (*Hester, supra*, 119 Cal.App.4th at p. 382.) A car search uncovered a loaded firearm. The People attempted to justify the search because three of the occupants (two adults and a juvenile) were on probation and had consented to warrantless searches. (*Hester, supra*, 119 Cal.App.4th at p. 392.) *Hester* ruled that the rationale of our decision in *Sanders, supra*, 31 Cal.4th 318, would invalidate the search as to *both* the adult and juvenile occupants. (*Hester, supra*, 119 Cal.App.4th at pp. 404–405.)

In *Hester*'s view, *Sanders* had disapproved of each doctrinal underpinning supporting *Tyrell J.* except possibly for the "unique considerations related to

the juvenile justice system." (*Hester, supra*, 119 Cal.App.4th at p. 404.) *Hester* continued by finding that "[t]he People have failed to identify any juvenile justice system consideration that would require this court to sanction police conduct that otherwise violates the Fourth Amendment." (*Ibid.*) Recognizing, however, that *Tyrell J.* remained as precedent binding on the lower courts until expressly overruled, *Hester* limited that case to its facts, "the stop of a juvenile in a public place," rather than "the detention of a lawfully operated" (*id.* at p. 405) automobile: "To do otherwise would encourage police misconduct, especially in a high-crime neighborhood, such as the one in this case." (*Hester, supra*, 119 Cal.App.4th at pp. 404–405.)

The foregoing cases agree that the only remaining *Tyrell J.* rationale possibly left untouched by *Sanders* is "the special needs of the juvenile probation scheme." (*Tyrell J., supra*, 8 Cal.4th at p. 87.) As noted above, the dissent in *Tyrell J.* doubted that those needs would be promoted by allowing a police search not premised on knowledge of the probation search condition. (*Id.* at p. 92 (dis. opn. of Kennard, J.).)

In the present case, the People initially insisted that because minor supposedly lacked a reasonable expectation of privacy, he was not "searched" in the constitutional sense. But, as the Attorney General later conceded, the People's major premise is incorrect, because under both *Sanders* and *Tyrell J.*, a search condition may diminish, but does not entirely preclude, a reasonable expectation of privacy, i.e., a reasonable expectation that officers will not undertake a random search supported by neither evidence of criminal activity nor advance knowledge of the search condition. (*Sanders, supra*, 31 Cal.4th at p. 333; see *Tyrell J., supra*, 8 Cal.4th at p. 87, fn. 5 (maj. opn. of Lucas, C. J.); *id.* at pp. 96–97 (dis. opn. of Kennard, J.).) This reasoning would apply with equal force to juvenile or adult probationers.

Indeed, the high court's decision in *Samson, supra*, 547 U.S. 843 [126 S.Ct. 2193], reinforces *Sanders*'s view that persons on probation or parole who are subject to a search condition nonetheless retain some residual expectation of privacy. *Samson* involved a *parolee* search conducted by officers *aware* of the parolee's consent-to-search condition, and held that, applying the usual " 'totality of the circumstances' " test to determine reasonableness, the Fourth Amendment did not prohibit such officers from conducting a suspicionless search of the parolee. (*Samson, supra*, 547 U.S. at p. ___ [126 S.Ct. at p. 2197].) *Samson* reasoned that parolees have a greatly reduced expectation of privacy by reason of their parolee status and their prior consent to warrantless searches. (*Samson, supra*, 547 U.S. at pp. ___–___ [126 S.Ct. at pp. 2198–2199].) In this respect, *Samson* is consistent with our own decision in *People v. Reyes, supra*, 19 Cal.4th 743, allowing "suspicionless" searches of parolees with search consent conditions, as long as the search is not "arbitrary, capricious or harassing." (*Id.* at p. 752.)

But under *Samson,* both parolees and probationers retain some expectation of privacy, albeit a reduced one. Indeed, *Samson* noted that "parolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment." (*Samson, supra,* 547 U.S. at p. ___ [126 S.Ct. at p. 2198].) This reasoning severely undercuts *Tyrell J.*'s conclusion that juvenile probationers who are subject to a search condition have no reasonable expectation of privacy whatever. (See *Tyrell J., supra,* 8 Cal.4th at p. 87.)

*Samson* also appears to support minor's view that the high court approves of our *Sanders* holding requiring prior knowledge of the search condition as a protection against harassing searches. In *Samson,* Justice Stevens in dissent accused the majority of allowing law enforcement officers in California "unfettered discretion" to conduct parolee searches. (*Samson, supra,* 547 U.S. at p. ___ [126 S.Ct. at p. 2207] (dis. opn. of Stevens, J.).) The *Samson* majority disagreed, responding that, under California law, suspicionless searches of parolees could not be conducted *without prior knowledge of the person's parole status.* (*Samson, supra,* 547 U.S. at p. ___, fn. 5 [126 S.Ct. at p. 2202, fn. 5], citing *Sanders, supra,* 31 Cal.4th at pp. 331–332.) This language could reasonably be read as approving *Sanders* as a protection against arbitrary parolee searches. Certainly, nothing in *Samson* suggests any *disapproval* of this aspect of *Sanders.* As noted above, the officers in *Samson* were well aware of the parole search condition.

Responding to the question whether a search by an officer unaware of a probation condition would promote the special needs of the juvenile probation system, the People simply claim that the *Tyrell J.* rule would discourage criminal behavior by juvenile probationers who know they may be searched at any time. In *Sanders, supra,* 31 Cal.4th at page 333, we rejected a similar "deterrence" justification for searching adult parolees or probationers. We stated that "if an officer is unaware that a suspect is on probation and subject to a search condition, the search *is not justified by the state's interest in supervising probationers or by the concern that probationers are more likely to commit criminal acts.*" (*Ibid.,* italics added.)

As Justice Kennard's dissent in *Tyrell J., supra,* 8 Cal.4th at pages 97–98, observed, the very existence of a probation search condition, whether for adults or juveniles, should amply deter further criminal acts, and that deterrent effect would not be eroded merely by requiring that searching officers be aware of that condition. If there are other "special needs" of the juvenile probation system that would be undermined by the rule we propose, the People do not identify them, nor do we discern any.

The majority in *Tyrell J., supra,* 8 Cal.4th at page 87, opined that the goal of rehabilitating juvenile offenders "is arguably stronger than in the adult

context." But it is certainly arguable that the state's interest in reducing the unduly high recidivism rate among *adult* parolees is on a par with, if not greater than, the need to assure that juvenile probationers do not reoffend. (See *Samson, supra,* 547 U.S. at p. ___ [126 S.Ct. at p. 2200] [quoting a statistical study indicating that "California's parolee population has a 68-to-70 percent recidivism rate"].) Yet, as we have seen, despite the state's interest in monitoring adult parolees, our decision in *Sanders* would invalidate the search of an adult parolee under the circumstances presented in this case.

Amicus curiae Los Angeles County District Attorney argues that under the doctrine of *parens patriae,* a special relationship exists between the juvenile probationer and the state such that a special need arises to supervise and monitor the juvenile, subject only to his or her right to be free from "arbitrary, capricious and harassing searches." First, we believe that a search founded on neither reasonable suspicion of criminal activity nor advance knowledge of a probation search condition can aptly be characterized as arbitrary. Second, we cannot permit application of the doctrine of *parens patriae* to defeat the primary purpose of the exclusionary rule—to deter police misconduct. (See *Sanders, supra,* 31 Cal.4th at pp. 324, 332.) Assuming, as amicus curiae does, that juveniles have a greater need for repeated random and routine searches and for supervision than adult offenders, that need would not be impaired by requiring that the officers conducting such searches be aware of the search condition.

Justice Baxter's dissent largely repeats the points made in his dissent in *Sanders, supra,* 31 Cal.4th at page 341, where he advocated a rule allowing suspicionless searches of adult parolees by officers unaware of their parole status or advance consent to search. Indeed, he urges us to "revisit" *Sanders* in light of *Samson.* (Dis. opn., *post,* at p. 147.) But as we have explained (*ante,* at p. 136), *Samson* involved officers who were aware of the search condition and thus adds nothing of import to our *Sanders* analysis. Indeed, at one point *Samson* appears to endorse *Sanders*'s insistence that the searching officer have such knowledge, at least absent reasonable suspicion of criminal activity. (*Samson, supra,* 547 U.S. at p. ___, fn. 5 [126 S.Ct. at p. 2202, fn. 5].) The dissent stresses the fact that the searching officer here *believed* he had observed traffic violations warranting a stop, but as the Attorney General has conceded, that belief was a legally mistaken one that could not justify the detention. To allow searches of probationers or parolees based solely on the officer's supposed subjective "belief" that legal cause existed for a search predictably would invite repeated harassment and arbitrary searches.

The dissent places great emphasis on *Samson*'s use of a "totality of circumstances" test in measuring the validity of a search of a probationer or

parolee (see *Samson, supra,* 547 U.S. at p. ___ [26 S.Ct. at p. 2197]), but as *Sanders* explains, the reasonableness of a search must be determined based on the circumstances *known to the officer* when the search is conducted. (*Sanders, supra,* 31 Cal.4th at pp. 333–335.) Here, the arresting officer had neither reasonable suspicion of any criminal activity nor advance knowledge of a search condition that might have justified the search. The totality of these circumstances amounts to very little and does not justify the officer's search.

## CONCLUSION

For the foregoing reasons, we overrule *In re Tyrell J., supra,* 8 Cal.4th 68, and reverse the judgment of the Court of Appeal to the extent it is inconsistent with this opinion.

George, C. J., Kennard, J., Werdegar, J., Moreno, J., and Corrigan, J., concurred.

**BAXTER, J.,** Dissenting.—In finding the juvenile court erroneously denied suppression of the loaded firearm found in the juvenile probationer's car, the majority adopts the rule that, when an officer detains a juvenile driving on a public street, without advance knowledge that the juvenile is subject to a search and seizure condition of probation but with a mistaken belief that a traffic violation has occurred, any contraband subsequently found in the car must be suppressed, notwithstanding the juvenile's greatly reduced expectation of privacy due to the probation condition and other circumstances surrounding the detention and subsequent search. Because the majority's rule flouts the federal constitutional standards that govern evidence suppression in California, I dissent.[1]

### A. *The Facts of the Challenged Detention and Search*

In this case, the juvenile was subject to a validly imposed condition of probation that required him to submit his person and property, including his car, to warrantless searches and seizures at any time, with or without probable cause.

While driving a car on a public street with three companions, the juvenile was pulled over by a police officer for a perceived traffic law violation, which

---

[1] In the absence of express statutory authority, California courts may not exclude evidence seized in violation of either the state or federal Constitution *unless exclusion is compelled by the federal Constitution.* (Cal. Const., art. I, § 28, subd. (d); *In re Lance W.* (1985) 37 Cal.3d 873, 884–890 [210 Cal.Rptr. 631, 694 P.2d 744].) Accordingly, we review issues relating to the suppression of evidence derived from police searches and seizures under federal constitutional standards. (*People v. Robles* (2000) 23 Cal.4th 789, 794 [97 Cal.Rptr.2d 914, 3 P.3d 311].)

perception later proved incorrect. The officer made no attempt to search the juvenile or his car for contraband at the outset of the stop. Instead, the officer followed routine traffic stop procedures and asked the juvenile for his driver's license, which the juvenile said he did not have. As the two spoke, the officer saw a box of ammunition in the car in plain view. Further inquiry disclosed that none of the car's occupants possessed a valid driver's license, and the officer ordered the car impounded.

A loaded firearm was discovered during a subsequent inventory search of the impounded car. The juvenile court denied the juvenile's motion to suppress the firearm evidence.

### B.   *Totality of the Circumstances Analysis*

*In re Tyrell J.* (1994) 8 Cal.4th 68 [32 Cal.Rptr.2d 33, 876 P.2d 519] (*Tyrell J.*) upheld the admission of evidence obtained through the warrantless search of a juvenile by a police officer who was unaware of the juvenile's probation search condition at the time of the search. In doing so, *Tyrell J.* stated categorically that a minor subject to a probation condition allowing warrantless searches has "*no* reasonable expectation of privacy" over contraband on his person. (8 Cal.4th at p. 74, italics added; see also *id.* at p. 86.) Today the majority overrules *Tyrell J.* by adopting a different rule that, without exception, the absence of advance officer knowledge of a juvenile's probation search condition compels exclusion of the fruits of a suspicionless detention and subsequent search of the juvenile probationer's car. Recent Fourth Amendment decisions, however, make it apparent that both categorical approaches are wrong.

Earlier this year the United States Supreme Court decided *Samson v. California* (2006) 547 U.S. 843 [165 L.Ed.2d 250, 126 S.Ct. 2193] (*Samson*), which emphasizes the now familiar principle that courts are to examine the " 'totality of the circumstances' " in determining whether a particular search is reasonable within the meaning of the Fourth Amendment. (*Samson, supra,* 547 U.S. at p. ___ [126 S.Ct. at p. 2197].) *Samson* and other recent United States Supreme Court decisions demonstrate that many of the notions underlying today's majority holding should be rejected as obsolete. By neglecting to faithfully apply the high court's totality of the circumstances analysis and instead requiring the suppression of evidence based on outdated reasoning and ill-conceived criticisms of *Tyrell J.*, the majority reaches a result flatly at odds with current Fourth Amendment jurisprudence.

*Samson* affirmed that a parolee search condition can "so diminish or eliminate a [parolee's] reasonable expectation of privacy that a suspicionless search by a law enforcement officer would not offend the Fourth Amendment." (*Samson, supra,* 547 U.S. at p. ___ [126 S.Ct. at p. 2196], fn.

omitted.) Although the officer in *Samson* had knowledge of the lawfully imposed search condition at the time of the challenged search, while here the officer did not, *Samson* reiterated that the reasonableness of a search under the Fourth Amendment must be determined by the " 'totality of the circumstances' " surrounding the search. (*Samson, supra*, 547 U.S. at p. ___ [26 S.Ct. at p. 2197].)

*Tyrell J.* was decided long before *Samson* and another fairly recent high court decision concerning probationers, *United States v. Knights* (2001) 534 U.S. 112 [151 L.Ed.2d 497, 122 S.Ct. 587] (*Knights*). Nonetheless, the end result of *Tyrell J.*, if not its analysis, holds up under these later decisions. Under *Knights* and *Samson*, the exclusionary rule does not require suppression of evidence obtained as a result of a search that is reasonable within the meaning of the Fourth Amendment, and "[w]hether a search is reasonable 'is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.' " (*Samson, supra*, 547 U.S. at p. ___ [126 S.Ct. at p. 2197], quoting *Knights, supra*, 534 U.S. at pp. 118–119.)

With regard to the degree to which a search is intrusive, there was no dispute that the juvenile in *Tyrell J.*, like the juvenile here, was on probation under the lawfully imposed condition that he submit his person and property to warrantless search by any peace officer, with or without probable cause, and there appeared no reason to doubt the juvenile had been clearly informed of this condition. *Tyrell J.*'s observation—that a juvenile probationer subject to a valid search condition "has a greatly reduced expectation of privacy" over his or her person or property (*Tyrell J., supra*, 8 Cal.4th at p. 87, fn. 5)—is very similar to the United States Supreme Court's conclusion that the existence of a probation search condition is a "salient circumstance" that "significantly diminish[es]" the probationer's "reasonable expectation of privacy." (*Knights, supra*, 534 U.S. at pp. 118, 120; see also *Samson, supra*, 547 U.S. at p. ___ [126 S.Ct. at p. 2199] [concluding the subject parolee "did not have an expectation of privacy that society would recognize as legitimate"].) However, to the extent *Tyrell J.* flatly stated a juvenile probationer has "*no* reasonable expectation of privacy" (*Tyrell J., supra*, 8 Cal.4th at p. 74, italics added), we may easily correct this and clarify both that a juvenile probationer's expectation of privacy is greatly reduced but not eliminated, and that the existence of a valid search and seizure condition is significant but not necessarily controlling on the question of reasonableness.

As for the degree to which a warrantless search of a juvenile probationer is " 'needed for the promotion of legitimate governmental interests' " (*Knights, supra*, 534 U.S. at p. 119), there is no doubt the governmental interests at

stake in the probation context are legitimate and well established. "[I]t must be remembered that 'the very assumption of the institution of probation' is that the probationer 'is more likely than the ordinary citizen to violate the law.' [Citation.] The recidivism rate of probationers is significantly higher than the general crime rate. [Citations.] And probationers have even more of an incentive to conceal their criminal activities and quickly dispose of incriminating evidence than the ordinary criminal because probationers are aware that they may be subject to supervision and face revocation of probation, and possible incarceration, in proceedings in which the trial rights of a jury and proof beyond a reasonable doubt, among other things, do not apply [citations]." (*Id.* at p. 120 [addressing adult probationers].) Indeed, California has two valid concerns with a probationer: "On the one hand is the hope that he will successfully complete probation and be integrated back into the community. On the other is the concern, quite justified, that he will be more likely to engage in criminal conduct than an ordinary member of the community." (*Id.* at pp. 120–121.) As *Samson* observed, the high court "has repeatedly acknowledged that a State's interests in reducing recidivism and thereby promoting reintegration and positive citizenship among probationers . . . warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment." (*Samson, supra,* 547 U.S. at p. ___ [126 S.Ct. at p. 2200].)

Additionally, this case involves the special needs of juvenile probation, which " 'is not an act of leniency, but is a final order made in the minor's best interest.' " (*Tyrell J., supra,* 8 Cal.4th at p. 81.) As Justice Werdegar keenly observes, "The purposes and goals of juvenile proceedings are manifestly different from criminal proceedings involving adults." (*People v. Reyes* (1998) 19 Cal.4th 743, 768–769 [80 Cal.Rptr.2d 734, 968 P.2d 445] (conc. & dis. opn. of Werdegar, J.).) "Unlike a prison sentence and subsequent period of parole imposed on the adult offender, '[t]he process of the juvenile court involves determination of the needs of the child and society, provision for guidance and treatment for the juvenile, and protection of the child from punishment and stigma.' " (*Id.* at p. 769.) Accordingly, a juvenile has no choice whether or not to accept a condition of probation that subjects him to a warrantless search, for "[i]t would be inconsistent with the juvenile court's determination of the best manner in which to facilitate rehabilitation of a minor if [the minor] could . . . elect to forgo home placement on probation and instead choose detention at the California Youth Authority." (*Tyrell J., supra,* 8 Cal.4th at p. 82.)

In the adult probationer context, *Knights* concluded that a warrantless investigatory search, supported by reasonable suspicion of criminal activity and authorized by a condition of probation, is reasonable within the meaning of the Fourth Amendment, and that the search is not invalid for lacking a probation-related purpose. Although *Knights* did not reach the question

whether a search of a probationer would be reasonable under the Fourth Amendment if predicated solely on a condition of probation, *Samson* undertook to address that question, albeit in the context of a parolee search. (*Samson, supra,* 547 U.S. at p. ___ [126 S.Ct. at p. 2198].)

Significantly, *Samson* concluded that California's interest in reducing recidivism while promoting reintegration of parolees into productive society justified a supervisory scheme that allowed suspicionless searches. (*Samson, supra,* 547 U.S. at p. ___ [126 S.Ct. at p. 2200].) Therefore, the searches in this case and in *Tyrell J.* are in line with the suspicionless searches the Fourth Amendment allows for parolees and, presumably, for probationers.[2]

Applying the proper analysis to the facts of this case, I conclude the detention of the juvenile and the warrantless search of his vehicle were reasonable within the contemplation of the Fourth Amendment, despite the officer's lack of knowledge of the juvenile's probation search condition, given the totality of the following circumstances: (1) as in *Samson, supra,* 547 U.S. at page ___ [126 S.Ct. at p. 2200], California's significant interests in "reducing recidivism and thereby promoting reintegration and positive citizenship" among juvenile probationers would be advanced by a probation oversight system that allows suspicionless searches; (2) here, the juvenile probationer was subject to a validly imposed condition of probation that required him to submit his person and property, including his vehicle, to a warrantless search and seizure at any time, with or without probable cause; (3) the probation condition greatly diminished the juvenile's subjective and objective expectations of privacy, especially while in a car on a public street (*People v. Wells* (2006) 38 Cal.4th 1078 [45 Cal.Rptr.3d 8, 136 P.3d 810]);[3] (4) the officer stopped the juvenile's car—not on an arbitrary whim, or out of caprice, or because he sought to harass the occupants—but with what the officer believed was proper justification based on the juvenile's failure to signal when turning and pulling over to the curb[4] (see pt. C., *post*); (5) the juvenile's probation condition provided legal authority for the type of detention that occurred; (6) although the officer apparently misjudged the propriety

---

[2] Although the high court acknowledged that parolees have even fewer expectations of privacy than probationers "because parole is more akin to imprisonment than probation is to imprisonment" (*Samson, supra,* 547 U.S. at p. ___ [126 S.Ct. at p. 2198]), it also reiterated the point that "a State's interest in reducing recidivism and thereby promoting reintegration and positive citizenship *among probationers and parolees* warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment" (*id.* at p. ___ [126 S.Ct. at p. 2200], italics added).

[3] " '[I]n light of the pervasive regulation of vehicles capable of traveling on the public highways, individuals generally have a reduced expectation of privacy while driving a vehicle on public thoroughfares.' " (*People v. Wells, supra,* 38 Cal.4th at p. 1087.)

[4] Even if a probationer might otherwise bear the burden of showing a search was undertaken in a capricious, arbitrary, or harassing manner when the officer has knowledge of a probation search and seizure condition, I believe that in situations where awareness of the probation

of the traffic stop, he made no attempt to search the juvenile or the car for contraband at the outset of the stop; (7) instead, the officer followed routine traffic stop procedures and asked for the juvenile's driver's license; (8) as the officer spoke with the juvenile and ascertained that the juvenile did not have a driver's license, he saw a box of ammunition in the car in plain view; (9) further inquiry led to the officer's discovery that none of the car's occupants possessed a valid driver's license, and these circumstances provided sufficient grounds to impound the car; and (10) the loaded firearm was not discovered during an on-site search of the car, but was found during an inventory search after the car was impounded. Under these circumstances, the Fourth Amendment does not require suppression of the loaded firearm evidence at the juvenile court proceeding.

## C. *Arbitrary, Capricious, or Harassing Searches*

As indicated, federal constitutional standards govern our review of issues relating to the suppression of evidence obtained from police searches and seizures. (*People v. Robles, supra,* 23 Cal.4th at p. 794; see *ante,* fn. 1.) In holding the evidence obtained from the instant search must be suppressed, the majority reasons that a warrantless search following a detention of a probationer that is supported by neither reasonable suspicion nor advance police knowledge of an applicable probation condition is "arbitrary" or "harassing" and therefore unreasonable and subject to suppression. (Maj. opn., *ante,* at pp. 137, 138.)

As a preliminary matter, the majority is wrong to characterize a detention and search of a probationer as arbitrary or harassing, merely because reasonable suspicion and advance knowledge of a probation search condition are found lacking. An officer can act with a legitimate law enforcement purpose without knowing the person under investigation is a probationer, and an officer's mistaken belief as to the sufficiency of legal grounds for a search does not transform a search that is later found to be illegal into one that was arbitrary or harassing for lack of a proper law enforcement purpose. Put another way, when a court later determines that an officer's detention of a probationer was not supported by reasonable suspicion, the officer's mere mistake in concluding such suspicion existed does not render the detention and subsequent search arbitrary, capricious or harassing. (See *People v. Cervantes* (2002) 103 Cal.App.4th 1404, 1408 [127 Cal.Rptr.2d 468] ["[a] mere legal or factual error by an officer that would otherwise render a search illegal, e.g., a mistake in concluding that probable cause exists for an arrest, does not render the search arbitrary, capricious or harassing"].)

condition is lacking at the time of the search, the People might appropriately shoulder the burden of showing it was not conducted in a capricious, arbitrary, or harassing manner. Here, any such burden was met.

More importantly, the United States Supreme Court has not ruled that, under the Fourth Amendment, the reasonableness of a suspicionless search of a probationer or parolee is dependent on the searching officer's knowledge of a valid search condition. Instead, the high court has commented: "*Under California precedent*, we note, an officer would not act reasonably in conducting a suspicionless search absent knowledge that the person stopped for the search is a parolee. See *People* v. *Sanders* [(2003) 31 Cal.4th 318, 331–332 [2 Cal.Rptr.3d 630, 73 P.3d 496]; Brief for United States as *Amicus Curiae* 20.]" (*Samson, supra,* 547 U.S. at p. ___ [126 S.Ct. at p. 2202, fn. 5], italics added.) It bears emphasis that the high court expressed this point while dismissing the concern that California's suspicionless search system inflicts "dignitary harms that arouse strong resentment in parolees and undermine their ability to reintegrate into productive society." (*Id.* at p. ___ [126 S.Ct. at p. 2202].) In doing so, the high court shows it evidently regards the matter of officer knowledge as a California requirement that guards against the type of searches that potentially could frustrate the goals of California's parole system, and not as a Fourth Amendment requirement of a reasonable search or a federal constitutional basis for suppression of evidence.

On this last point, I observe that the majority's categorical approach here is similar to the approach advocated by the dissent in *Samson.* That is, the *Samson* dissent would have adopted a bright-line rule of unreasonableness to the effect that the Fourth Amendment does not permit warrantless searches of parolees that are supported neither by individualized suspicion nor by special needs. (*Samson, supra,* 547 U.S. at p. ___ [126 S.Ct. at p. 2203] (dis. opn. of Stevens, J.).) The dissent also suggested "[i]t would *necessarily* be arbitrary, capricious, and harassing to conduct a suspicionless search of someone without knowledge of the status that renders that person, in the State's judgment, susceptible to such an invasion." (*Id.* at p. ___ [126 S.Ct. at p. 2207, fn. 7], italics added). Significantly, the *Samson* majority did not adopt or otherwise approve of the dissent's categorical approaches, and this court likewise should avoid doing so here.

Indeed, the majority here is unable to cite to any high court opinion that has embraced this particular rule in assessing when searches involving probationers or parolees are reasonable under the Fourth Amendment. That is not surprising, as even the majority here and courts in other jurisdictions cite California decisional law, not the federal Constitution, as the origin of that rule. (Maj. opn., *ante,* at p. 137; e.g., *United States v. Stuckey* (S.D.N.Y. 2006) 2006 WL 2390268, *3, fn. 2; *United States v. Albert* (N.D.Cal. 2006) 2006 WL 2078564, *2.)

### D. *Stated Bases for Overruling* Tyrell J.

Instead of looking to the high court's Fourth Amendment decisions and its totality of the circumstances analysis for guidance on whether or not the evidence in *Tyrell J.* required suppression, the majority concludes *Tyrell J.* should be overruled based on: (1) the conclusion in *People* v. *Sanders, supra,* 31 Cal.4th 318 (*Sanders*) that the rule in *In re Martinez* (1970) 1 Cal.3d 641 [83 Cal.Rptr. 382, 463 P.2d 734] requires the reasonableness of a search be determined based on the circumstances *known to the officer* when the search is conducted (maj. opn., *ante,* at pp. 133–134); (2) *Sanders*'s determination, based on the dissent's observation in *Tyrell J.,* that requiring officer awareness of search conditions would not itself affect the goal of deterrence, because the very existence of a probation search condition should deter further criminal acts (maj. opn., *ante,* at p. 134); and (3) the identification in *Sanders* of "a substantial body of scholarly commentary critical of our *Tyrell J.* analysis," the gist of which was that "*Tyrell J.* eroded the Fourth Amendment protections for juveniles by giving police an incentive to conduct a warrantless search, unsupported by reasonable suspicion of criminal conduct, in the bare hope that a search condition may exist" (maj. opn., *ante,* at p. 135). None of these reasons provides a sound analytical basis for completely rejecting *Tyrell J.* in favor of an approach that finds a search following a suspicionless detention of a juvenile probationer unreasonable per se if the officer lacks knowledge of an applicable search condition.

#### 1. In re Martinez

In 1970, *In re Martinez* found that police authorities, who did not know of a defendant's parole status, violated the defendant's Fourth Amendment rights by undertaking an investigative search lacking in probable cause that related to the defendant's suspected criminal activity. (*In re Martinez, supra,* 1 Cal.3d at p. 646.) In so concluding, *In re Martinez* regarded a parolee's reasonable expectation of privacy far more favorably and expansively than have later United States Supreme Court decisions.

For example, *In re Martinez* stated: "The conditional nature of a parolee's freedom *may* result in *some* diminution of his reasonable expectation of privacy and thus may render *some* intrusions *by parole officers* 'reasonable' even when the information relied on by the parole officers does not reach the traditional level of '*probable cause.*' " (*In re Martinez, supra,* 1 Cal.3d at p. 647, fn. 6, italics added.) In observing that a "diminution of Fourth Amendment protection[s]" "can be justified only to the extent actually necessitated by the legitimate demands of the operation of the parole process" (*ibid.*), *In re Martinez* concluded that unless suspected parole violations are involved, a search by police officers to investigate suspected criminal activity could not be undertaken without probable cause. (*Id.* at p. 646.)

It is worth noting at the outset that *Tyrell J.* addressed the analysis in *In re Martinez* and rejected the reasoning that *Sanders* adopted. (*Tyrell J.*, *supra*, 8 Cal.4th at pp. 88–89.) Moreover, as *Samson*, *supra*, 547 U.S. 843 [126 S.Ct. 2193], illustrates, the notions upon which *In re Martinez* was based—i.e., regarding (1) the perception that a lawfully imposed search and seizure condition results only in *some* diminution of a parolee's privacy expectations and (2) the perceived invalidity of a parole system that allows suspicionless searches to investigate suspected criminal activity as well as suspected parole violations—are now obsolete.

In light of *Samson*, we should revisit *Sanders*'s adoption of *In re Martinez*'s reasoning that no circumstances other than those *known to the officer* are relevant to determining whether a search of a parolee is reasonable. (See *Sanders*, *supra*, 31 Cal.4th at p. 332.) First, by assessing only the reasonableness of an officer's suspicion in undertaking a particular search, and neglecting to evaluate the actual reasonableness of the search in view of both the officer's actions and the suspect's legitimate privacy expectations, the rule provides an incomplete measure of whether a search does or does not violate the Fourth Amendment. Second, the rule in *In re Martinez* was articulated at a very different time, when parolees were not viewed as having significantly reduced expectations of privacy. Finally, the rule is inconsistent with the high court's current emphasis on the "fact-specific nature of the reasonableness inquiry" and rejection of "bright-line rules." (*Ohio v. Robinette* (1996) 519 U.S. 33, 39 [136 L.Ed.2d 347, 117 S.Ct. 417].)

## 2. *Deterrence of Recidivism and Criminal Misconduct*

The majority agrees with *Sanders*'s conclusion, based on the dissent's observation in *Tyrell J.*, that requiring officer awareness of search conditions would not itself affect the goal of deterrence, because the very existence of a probation search condition should deter further criminal acts. (Maj. opn., *ante*, at p. 134.) I disagree. While the existence of a search condition may deter some juvenile probationers from committing further criminal acts, a bright-line rule requiring officer awareness inhibits the goal of deterrence by materially restricting the lawfully imposed condition that a probationer and his property are subject to a search and seizure by any peace officer at any place at any time. By eliminating any distinction between the reasonable privacy expectations of a juvenile probationer and those of a law-abiding citizen in the context of a search that follows a suspicionless detention, and allowing juvenile probationers with greatly reduced expectations of privacy to escape the consequences of their recidivist misconduct in cases like this, such a rule undermines the state's special need to rehabilitate and reintegrate youthful offenders into productive society.

### 3. *Incentive to Conduct Warrantless Searches*

*Tyrell J.* reasoned: "Because [the officer] did not know whether the minor was subject to a search condition, the officer took the chance that the search would be deemed improper. If it had turned out that the minor was not subject to a search condition, any contraband found in the search of the minor would have been inadmissible in court. Thus, under our interpretation, law enforcement officers still have a sufficient incentive to try to avoid improperly invading a person's privacy." (*Tyrell J., supra,* 8 Cal.4th at p. 89.)

On this score, the majority finds persuasive "a substantial body of scholarly commentary" criticizing *Tyrell J.* for "erod[ing] the Fourth Amendment protections for juveniles by giving police an incentive to conduct a warrantless search, unsupported by reasonable suspicion of criminal conduct, in the bare hope that a search condition may exist." (Maj. opn., *ante,* at p. 135.)

These criticisms are off the mark. The United States Supreme Court has now made it quite clear that the constitutional reasonableness of a search must be determined in view of the totality of the circumstances. I believe the high court most likely would reject a blanket rule of unreasonableness in the context of probationer and parolee searches, for it has repeatedly emphasized that these convicted lawbreakers possess significantly reduced expectations of privacy due to legally imposed search and seizure conditions that provide for suspicionless detentions and searches.

Moreover, the United States Supreme Court continues to caution that the exclusionary rule generates " 'substantial social costs,' " including "setting the guilty free and the dangerous at large." (*Hudson v. Michigan* (2006) 547 U.S. 586, ___ [165 L.Ed.2d 56, 126 S.Ct. 2159, 2163].) Because the exclusionary rule exacts a " ' "costly toll" upon truth-seeking and law enforcement objectives,' " courts must avoid its " '[i]ndiscriminate application' " and impose the rule only " 'where its deterrence benefits outweigh its "substantial social costs." ' " (*Ibid.*) To the extent no search and seizure condition exists to reduce an individual's legitimate privacy expectations, and the totality of the circumstances do not otherwise support the reasonableness of a search, imposition of the exclusionary rule provides ample incentive to deter police misconduct in proper measure to the attendant social costs. But applying the rule expansively beyond those situations in which a search actually intrudes on a person's reasonable privacy expectations, under the fiction that the

search condition did not even exist, as the majority does here, amounts to an indiscriminate application violating the cardinal principle that suppression of evidence should always be "our last resort, not our first impulse." (*Ibid.*)

Finally, I note the majority's categorical rule is sure to result in absurd applications in those situations where an officer is able to verify a juvenile's probationer status only after making a detention. For instance, imagine that an officer in a future case pulls a juvenile's car over for a perceived traffic violation, and thereafter recognizes (or otherwise ascertains) that the juvenile is a probationer subject to a probation search and seizure condition. The officer then conducts an on-the-scene search of the juvenile and his car, and finds contraband. Alternatively, imagine the officer in the instant case discovered the juvenile was subject to a probation search and seizure condition after the car was detained and impounded but before it was searched. Under the majority's rule, the contraband in both situations must be suppressed if the juvenile court determines the initial traffic stop was illegal because it was supported neither by reasonable suspicion of criminal activity nor by advance knowledge of an applicable search and seizure condition.

### E. Conclusion

I agree *Tyrell J.* should be disapproved to the extent it concludes that a juvenile subject to a valid search and seizure condition of probation has *no* reasonable expectation of privacy. In this regard, we are bound to follow the United States Supreme Court's analysis that suppression of evidence is not required when the police conduct a search that is reasonable within the meaning of the Fourth Amendment, and that the reasonableness of a search depends on the totality of the circumstances. Under that analysis, a juvenile who is subject to a valid search condition has privacy expectations that are greatly reduced but not eliminated, and the existence of a valid search condition is significant but not necessarily controlling on the question of reasonableness.

Here, the totality of the circumstances surrounding the challenged search shows, among other things, that the juvenile was subject to a valid search and seizure condition of probation that provided legal authority for an investigative search and greatly diminished the juvenile's objective and subjective expectations of privacy, that the officer stopped the juvenile's car—not arbitrarily, capriciously, or for purposes of harassment—but for what he mistakenly perceived was a traffic violation, and that the traffic stop was not particularly intrusive before the officer saw a box of ammunition in plain view in the car, which justified further investigation and ultimately led to the car's impoundment and inventory search.

Thus, despite the officer's ignorance of the juvenile's probation search condition, I would find that the traffic stop and subsequent inventory search of the car did not violate the juvenile's rights under the Fourth Amendment, and would hold that the loaded firearm evidence was admissible in juvenile court.