Mauro, J., Concurring and Dissenting.
I fully concur with parts I, III, IV, VI, VII, and VIII of the majority opinion, but I disagree with parts II and V addressing the electronic device search condition and the e-mail/internet search condition (hereafter the e-search conditions), which the majority opinion appears to analyze in the same manner. Although the majority opinion disagrees with the test applied in some other published opinions, I *157 would reach the same result regardless of the test. Whether the appropriate test is the "closely tailored" test or the "reasonableness" test (see the majority opinion at part IIA), I would remand the matter to the trial court to craft more closely tailored, or more reasonable, e-search conditions.
Given the current state of technology, I disagree with the majority that the intrusion imposed by the e-search conditions "is little different from the condition authorizing warrantless searches of defendant's residence." (Maj. opn. ante , at p. 433) Unless the e-search conditions are limited in some way, they authorize a potentially far greater intrusion than the search of a residence. Several years ago, in Riley v. California (2014) 573 U.S. 373, 134 S.Ct. 2473, [189 L.Ed.2d 430] ( Riley ), the United States Supreme Court described the capability of modern mobile devices. ( Id. at p. 394, 134 S.Ct. 2473.) Since then, electronic devices have become even more powerful and capable. An unlimited authorization to search electronic devices implicates privacy concerns far beyond the inspection of *444 an individual's pockets or even the most exhaustive search of a house (see id. at pp. 392-397, 134 S.Ct. 2473 ) because modern electronic devices can perform a myriad of functions and can access significant amounts of private information.
Certainly, mobile devices can be used as telephones, calendars, address books, diaries, note pads, cameras, video players, tape recorders, albums, maps, and web browsers. ( Riley, supra , 573 U.S. at p. 393, 134 S.Ct. 2473.) They can also reveal a person's private interests or concerns and other details of life. ( Id. at pp. 395-396, 134 S.Ct. 2473.) The "apps" on a person's cell phone can disclose his or her medical, political, legal, financial, sexual, religious and other private interests or concerns. ( Ibid. ) They can support sobriety, arrange intimate relationships, and track health condition and care, including menstrual cycles, blood pressure, pregnancy, diabetes, and medications. Because electronic devices can contain and reveal so much information, they now hold " 'the privacies of life.' " ( Id. at p. 403, 134 S.Ct. 2473.)
But the reach of online access is now so extensive and pervasive that the challenged e-search conditions may also permit intrusion into the privacy of those who are not on probation, did not consent to have their private information viewed, and may have no idea their information is being viewed. Modern devices have the capability to determine the location of family members and friends. They can also be used to access the social media postings of others, even when those other individuals have attempted to limit access to their content through appropriate privacy settings. In addition, with the passwords that the e-search conditions require defendant to divulge, defendant's electronic devices may permit access to numerous confidential family member accounts and records. I am unaware of any case holding that when an individual consents to probation, officers may observe the location *158 of the probationer's family members and friends throughout the country, and may also view, without a warrant, confidential family records and account information held by employers, financial institutions, health plans, hospitals, doctors, retirement plans, retailers, schools, media outlets, transportation providers, restaurants and food delivery services, entertainment and streaming businesses, cloud storage providers, associations, and political organizations. Yet all of that information may be available through a single mobile device.
The state certainly has interests in reducing recidivism, apprehending violators of the criminal law, and helping probationers integrate back into the community. It is also true that probationers have reduced privacy interests. Nevertheless, persons on probation subject to search conditions retain some residual expectation of privacy. ( In re Jaime P. (2006) 40 Cal.4th 128, 136-137, 51 Cal.Rptr.3d 430, 146 P.3d 965 ; see also United States v. Lara (9th Cir. 2016) 815 F.3d 605, 611-612.)
Here, I would conclude the unlimited e-search conditions challenged in this case are overbroad and unreasonable. The interest in controlling future identity theft, while significant, is simply not addressed by search conditions that could be used to review a genealogy report or a child's school records. I understand the concern that if a search authorization is expressly limited, the probationer may move criminal activities to the protected location. But that is a concern with any search limitation, and it is not a sufficient basis under the law to permit unfettered search authorization.