Filed 5/11/21  In re M.U. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re M.U., a Person Coming Under the Juvenile Court Law. _____ THE PEOPLE,<br><br>    Plaintiff and Respondent,<br>v.<br>M.U.,<br>    Defendant and Appellant. | A158829<br><br>(Napa County Super. Ct. No. 201835781-03) |

This is an appeal from a dispositional order adjudging M.U. a juvenile court ward pursuant to Welfare and Institutions Code section 602 and placing her in the home of her father under various probationary terms and conditions.  At issue in this appeal is one such condition requiring that M.U. not "wear or possess any clothing or other item or display any hand signs known by the minor to have criminal street gang significance."  M.U. contends that this gang condition is both unconstitutionally overbroad and unreasonable under *People v. Lent* (1975 ) 15 Cal.3d 481 (*Lent*), superseded by statute on another ground as stated in *People v. Moran* (2016) 1 Cal.5th 398, 403, fn. 6.  We disagree and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 30, 2019, a juvenile wardship petition was filed alleging that M.U., then age 13, had committed felony vandalism and misdemeanor resisting an officer. (Pen. Code, §§ 148, subd. (a)(1), 594, subd. (b)(1).) The allegations stemmed from an incident in which M.U.'s father (father) discovered her with a cell phone after he had taken hers away as punishment for her suspension from school. The two argued, and as father was trying to get his children into his truck to run an errand, he discovered that M.U. had scratched the rear right side of his vehicle with a Lego. Father had just paid approximately $1,000 to have his truck painted, and it would cost him an estimated $700 to repair the two-foot long yellow or green scratch. When he confronted M.U., she ran away. Father followed her in the truck, repeatedly telling her to get in, but she hid behind cars and walked in the other direction as if playing a game. Father called the police, who eventually detained the minor by handcuffing her after she was uncooperative and attempted to hit an officer.

M.U. was formally detained by the juvenile court on September 4, 2019. A joint report prepared by the probation department and child welfare services concluded that the minor would best be served in the delinquency system. Thereafter, at the contested jurisdictional hearing on October 3, 2019, the misdemeanor resisting allegation was dismissed. The juvenile court found the vandalism allegation true, reducing it to a misdemeanor.

Per the dispositional report in this matter, M.U. had been expelled from school in August 2019 after a physical altercation with a peer. Prior to her expulsion, school records indicated 36 behavior entries in the past year for defiance, leaving without permission, lying to staff, getting into physical altercations with peers, and engaging in threatening and obscene behaviors.

2

M.U. admitted to weekly use of alcohol and marijuana since the fifth grade. She was assessed as very high risk to reoffend.

With respect to gang concerns, the dispositional report noted that mother had "observed marked changes with the minor's overall attitude, aggression toward her peers and even her choice of music, which seems to encourage criminal gang activity. Although [mother did] not suspect the minor's friends of being gang associated, she stated there are members of their family that associate with or have in the past associated with the Norteño criminal street gang and the minor seem[ed] to be mimicking that behavior." Both parents reported that "the minor appears to glamorize the aggressive and defiant nature of the gang and its associates. [M.U.] previously reported to probation that she has friends who associate with gang members." The dispositional report also indicated that M.U. had admitted to and been suspected of Norteño gang activity. For example, middle school officials relayed to father that M.U. "was found to have gang associated writing on her hands and arm specifically identifying the Norteño criminal street gang." Additionally, while in juvenile hall, "the minor scratched the number '4' into the back of her right hand. The scratch scabbed and [had] been reopened requiring medical attention."

The dispositional hearing was held on October 17, 2019. Minor's counsel objected to a number of gang-related conditions, including the gang clothing and hand sign prohibition here at issue. The juvenile court disagreed, finding the conditions appropriate based on information in the dispositional report. The juvenile court then declared M.U. a juvenile court ward and placed her on probation in father's home following 57 days in juvenile hall, with credit for 50 days. The court imposed the gang-related conditions as well as other conditions of probation. This appeal followed.

3

## DISCUSSION

As stated above, the juvenile court ordered that the minor not "wear or possess any clothing or other item, or display any hand signs known by the minor to have criminal street gang significance." M.U. claims this gang-related condition must be stricken because it is not reasonably related to her future criminality and is unconstitutionally overbroad. We disagree.

" 'The purposes of juvenile wardship proceedings are twofold: to treat and rehabilitate the delinquent minor, and to protect the public from criminal conduct.' " (*In re Ricardo P.* (2019) 7 Cal.5th 1113, 1118 (*Ricardo P.*).) In furtherance of these goals, Welfare and Institutions Code section 730, subdivision (b), allows a juvenile court to "impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced." In doing so, the juvenile court considers the circumstances of the offense as well as the minor's entire social history. (*In re Tyrell J.* (1994) 8 Cal.4th 68, 81, overruled on other grounds in *In re Jaime P.* (2006) 40 Cal.4th 128, 130, 139.) Moreover, " '[a] condition of probation which is impermissible for an adult criminal defendant is not necessarily unreasonable for a juvenile receiving guidance and supervision from the juvenile court.' " (*Ricardo P.*, at p. 1118.)

We generally review conditions of probation for abuse of discretion. (*Ricardo P., supra*, 7 Cal.5th at p. 1118.) Thus, we will uphold the juvenile court's order unless " 'the condition is "arbitrary or capricious" or otherwise exceeds the bounds of reason under the circumstances.' " (*Ibid.*) A juvenile court's discretion in this context is not boundless. (*In re Victor L.* (2010) 182 Cal.App.4th 902, 910 (*Victor L.*).) Under *Lent, supra*, 15 Cal.3d 481, a probation condition is unreasonable and therefore invalid if it has no

4

relationship to the crime, relates to conduct which is not itself criminal, and requires or forbids conduct not reasonably related to future criminality. (*Id.* at p. 486; see *Ricardo P.*, at p. 1118.) "[T]he *Lent* test governs in juvenile and adult probation cases alike." (*Ricardo P.*, at p. 1119.)

There is no dispute that the gang condition at issue in this matter was not related to M.U.'s offense and does not, itself, involve criminal conduct. Relying on the Supreme Court's recent decision in *Ricardo P.*, *supra*, 7 Cal.5th 1113, M.U. argues that the gang condition must be stricken under *Lent* because it is also not reasonably related to her future criminality. Specifically, she asserts that the condition is extremely broad and burdensome while only tangentially related to her rehabilitation and the protection of society. It is true that *Ricardo P.* held that the third *Lent* prong "contemplates a degree of proportionality between the burden imposed by a probation condition and the legitimate interests served by the condition." (*Id.* at p. 1122.) Moreover, it "requires more than just an abstract or hypothetical relationship between the probation condition and preventing future criminality." (*Id.* at p. 1121.) However, *Ricardo P.* rejected the notion that there must be a nexus between the probation condition and the underlying offense. (*Id* at p. 1122.) Rather, " 'courts may properly base probation conditions upon information in a probation report that raises concerns about future criminality unrelated to' past criminal conduct." (*In re Alonzo M.* (2019) 40 Cal.App.5th 156, 166; see also *Ricardo P.*, at p. 1122.)

The challenged probation condition in this case is not overly burdensome as M.U. suggests, because it is limited to wearing or possessing gang clothes and displaying hand signs that *she knows* have gang significance. And the dispositional report is replete with information suggesting the minor is on the precipice of more serious gang involvement.

She reportedly glamorizes the aggressive and defiant nature of gangs, was found at school with gang associated writings identifying the Norteño street gang, and she carved a gang-related symbol on the back of her hand while in juvenile hall.  Under such circumstances, gang conditions are appropriate in wardship proceedings.  (See *In re Laylah K.* (1991) 229 Cal.App.3d 1496, 1500-1502, disapproved on other grounds by *In re Sade C.* (1996) 13 Cal.4th 952, 962 fn. 2 [noting that "[a]ssociation with gang members is the first step to involvement in gang activity" and upholding gang conditions as reasonable under *Lent* where the minors  were "in danger of succumbing to gang pressures"].)  Indeed, M.U. concedes as much by failing to challenge the other gang conditions imposed, acknowledging on appeal that prohibiting gang activities, associations, and tattoos is "narrowly tailored to the legitimate purpose of preventing her from being involved in a gang."  We see no violation of *Lent* on this record and certainly no abuse of discretion.

For similar reasons, M.U.'s overbreadth challenge fails.  The overbreadth doctrine requires that conditions of probation that impinge on constitutional rights must be tailored carefully and reasonably related to the compelling state interest in reformation and rehabilitation.  (*Victor L.*, *supra*, 182 Cal.App.4th at p. 910.)  "The essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on [the individual's] constitutional rights—bearing in mind, of course, that perfection in such matters is impossible, and that practical necessity will justify some infringement."  (*In re E.O.* (2010) 188 Cal.App.4th 1149, 1153.)  Additionally, under the vagueness doctrine, an order must be "sufficiently precise" for the probationer to know what is required and for the court to determine whether the condition has been violated.  (*Victor L.*, *supra*, 182 Cal.App.4th at p. 910.)

Whether a probation condition is unconstitutionally vague or overbroad is a question of law subject to our de novo review. (*In re Sheena K.* (2007) 40 Cal.4th 875, 888.)

We have already concluded that the probation condition at issue serves a legitimate purpose—restricting the minor's gang involvement. But M.U. argues that it is overbroad in that it "apparently pertains to any gang and could include virtually any item, color, emblem, hairstyle, way of wearing one's clothes, and forming any letter or number or combination thereof with her hands," thus placing her in "constant jeopardy" of violating her probation. To the contrary, as discussed above, the probation condition precludes only clothing and hand signs the minor *knows* have gang significance. This express knowledge limitation provides M.U. with adequate notice of the behaviors for which she will be held accountable, ensuring she will not be held to answer for any inadvertent conduct. (See, e.g., *In re H.C.* (2009) 175 Cal.App.4th 1067, 1071-1072 [modifying gang conditions to add a knowledge requirement]; *In re Justin S.* (2001) 93 Cal.App.4th 811, 816 [same].) In sum, this narrowly tailored probation condition designed to prevent M.U.'s interest in gangs from escalating into more serious criminal gang activity is both reasonable and constitutional.

## DISPOSITION

The dispositional order is affirmed.

_____

SANCHEZ, J.

We concur.


_____

HUMES, P.J.


_____

BANKE, J.


(A158829)

8