[Nos. F046430, F046858. Fifth Dist. May 12, 2005.]

In re JOSHUA J., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
JOSHUA J., Defendant and Appellant.

**COUNSEL**

Rex Williams, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, Louis M. Vasquez and Brian Alvarez, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**VARTABEDIAN, J.**—Are juveniles protected by the same rule of law protecting similarly situated adults: that an otherwise unlawful search may not be justified by the circumstance that the suspect was subject to a search condition of which the searching officers were totally unaware?

Joshua J., the appellant, contends the juvenile court erred in denying his suppression motion because recent California Supreme Court opinions espousing the above stated rule undermine *In re Tyrell J.* (1994) 8 Cal.4th 68 [32 Cal.Rptr.2d 33, 876 P.2d 519]. We agree with Joshua and will reverse.

## FACTS AND PROCEEDINGS

Fresno Police Department Sergeant Danny Edwards was patrolling the area of Calaveras and McKenzie Streets at 6:00 p.m., on July 5, 2004. The area is a high-crime neighborhood. Edwards saw Joshua and a companion walking down Calaveras Street. Edwards thought Joshua might be a person wanted on a felony warrant. Edwards had been in contact with that person, an adult, two weeks earlier.[1] Edwards initially saw Joshua from 60 to 70 feet away and believed he was the wanted person based on his height, weight, and complexion.

Edwards made a U-turn in his patrol car and drove back to Joshua's location. Joshua and his companion walked off Calaveras Street into an apartment complex. Edwards drove into the alley behind the complex, anticipating Joshua would walk through the complex to that location. Edwards called for backup from other officers. Joshua turned around in the complex and continued walking on Calaveras Street. Up to that time and throughout the ensuing police contact, Edwards was never able to verify that Joshua was the person wanted on the outstanding arrest warrant. Edwards could not find the arrest warrant information he had written down in his notebook two weeks earlier and could not recall the name of the wanted person.

Responding to Edwards's call for backup, Fresno Police Officers Verduzco and Reyes arrived on Calaveras Street and detained Joshua and his companion. Because Joshua matched the description given by Sergeant Edwards as the person Edwards was pursuing, Verduzco ordered Joshua and his companion to sit on the curb. Verduzco asked them their names, which they gave. He

---

[1] At the hearing on the motion to suppress, Sergeant Edwards's description of the wanted suspect he encountered two weeks prior to Joshua's arrest was vague. He testified that he believed the wanted person "was 19–20."

then questioned whether they were on probation or parole. Joshua responded no. Next, Joshua denied Verduzco's request to search him. Verduzco proceeded to ask Joshua to stand so he could conduct a patdown search for weapons. Verduzco performed a patdown search of Joshua based on the information received from Edwards that Joshua matched the description of a wanted felon and based on the prevalence of persons with weapons in this high-crime area.

While conducting the patdown, Officer Verduzco felt a bulge in Joshua's right front pocket. Upon squeezing it, Verduzco thought it could be a bag of marijuana. When asked about the bulge, Joshua said it was marijuana. Verduzco retrieved the bag and arrested Joshua. After his arrest, Joshua admitted he was on juvenile probation.[2]

On July 7, 2004, a petition was filed pursuant to Welfare and Institutions Code section 602 against Joshua, alleging that he possessed marijuana for sale (Health & Saf. Code, § 11359). On September 13, 2004, the juvenile court denied Joshua's suppression motion and Joshua admitted the allegation. At the conclusion of the disposition hearing on December 1, 2004, the juvenile court continued Joshua on probation.[3]

## DISCUSSION

Joshua contends the juvenile court should have granted the suppression motion because the officers had no reasonable suspicion to detain him or to perform a patdown search. Joshua argues the juvenile court erred in relying on *In re Tyrell J.*, *supra*, 8 Cal.4th 68 because this decision was impliedly overruled by the California Supreme Court in the subsequent cases of *People v. Robles* (2000) 23 Cal.4th 789 [97 Cal.Rptr.2d 914, 3 P.3d 311] and *People v. Sanders* (2003) 31 Cal.4th 318 [2 Cal.Rptr.3d 630, 73 P.3d 496].[4]

In *People v. Sanders*, *supra*, 31 Cal.4th 318, the police searched the residence of two persons, one of whom was on parole and subject to a search condition of which the police were unaware at the time of the search. The Supreme Court held the search was unlawful as to both persons, but we focus on the court's discussion of the search of the parolee who, like

---

[2] Joshua was on probation with a search condition when he was stopped by officers.

[3] Both case Nos. F046430 and F046858 are appeals from the same juvenile court action. Case No. F046430 was a premature appeal from the adjudication order. On January 27, 2005, we ordered both cases consolidated for all purposes.

[4] In *Tyrell J.*, a police officer searched the person of a juvenile probationer without knowing the minor was on juvenile probation and subject to a search condition, and found a bag of marijuana in one of the minor's pockets.

appellant, was subject to a search condition. Key to that discussion was the fact the police were not aware of the parolee's search condition prior to the search. Consequently, the search could not be justified as a parole search, because the officer was not acting pursuant to the conditions of parole. (*Id.* at p. 333.) Similarly, the court stated, albeit in dicta, "if an officer is unaware that a suspect is on *probation* and subject to a search condition, the search is not justified by the state's interest in supervising probationers or by the concern that probationers are more likely to commit criminal acts." (*Ibid.*, italics added.)

■ The court emphasized that the validity of the search depends on the officer's purpose. (*People v. Sanders, supra*, 31 Cal.4th at p. 334.) The court noted that whether a search is reasonable must be determined based upon the circumstances known to the officer when the search is conducted and this requirement is consistent with the primary purpose of the exclusionary rule, which is to deter police misconduct. (*Ibid.*) An otherwise unlawful search of the residence of an adult parolee may not be justified by the circumstance that the suspect was subject to a search condition of which the law enforcement officers were unaware when the search was conducted. (*Id.* at p. 335.)

Respondent contends the above rule does not apply when the person searched is a juvenile, that we are presently bound by *In re Tyrell J., supra*, 8 Cal.4th 68. In order for *Tyrell J.* to have binding effect, one would have to conclude that the California Supreme Court presently subscribes to the notion that, based on the special needs of juveniles under the doctrine of *parens patriae,* juvenile probationers are afforded less protection by the Fourth Amendment than adult probationers and parolees. However, the majority in *People v. Sanders, supra*, 31 Cal.4th at page 335, footnote 5, noted this particular issue was left undecided by *Sanders* when it declined to reach this issue observing that: "Because this case does not involve a juvenile, we need not, and do not, decide this issue." As Justice Kennard (who dissented in *Tyrell J.*) wrote separately in *Sanders,* "Left open by the majority here is the continuing vitality of the majority opinion in *Tyrell J.* . . . ." (*Sanders,* at p. 337 (conc. opn. of Kennard, J.).)

■ Because the high court itself dismantled the foundation and corner-stones of *Tyrell J.*, we reject respondent's argument that we are bound to follow *Tyrell J.* under the rule of *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]. After *Sanders*

was published, the vitality of *Tyrell J.* remains an unanswered question. Thus, we take the view that there is no presently binding Supreme Court authority that directly answers the following question, which we must answer anew: When a police officer conducts an otherwise illegal search of a juvenile, may the fruits of the search be properly admitted into evidence against the juvenile solely based on the juvenile's probation search condition of which the officer was unaware?

A succinct answer to this question was offered by Justice Kennard: "I would draw no distinction between the warrantless search of an adult parolee and the warrantless search of a juvenile probationer. As to each, I would apply the same analysis: Neither search can later be justified by information such as the search condition in this case that was unknown to the searching officer." (*People v. Sanders, supra,* 31 Cal.4th at pp. 337–338 (conc. opn. of Kennard, J.).)

Recently, the majority of a different panel of this court confronted a similar question. In *People v. Hester* (2004) 119 Cal.App.4th 376 [14 Cal.Rptr.3d 377], the majority determined that the stop of a vehicle cannot be justified when the officer stopping the vehicle had no knowledge of the fact that among the car's occupants were persons on probation or parole, including a juvenile who was on search-conditioned probation; the majority noted these factual circumstances were distinguishable from *Tyrell J.* (*Hester, supra,* at p. 398.) (The third panel member did not reach the *Tyrell J.* related issue, finding there was a reasonable suspicion for the stop.)

While the *Hester* majority felt "compelled by *Sanders* to limit *Tyrell J.* to its facts" (*People v. Hester, supra,* 119 Cal.App.4th at p. 404), it noted that the Supreme Court in *Tyrell J.* stated "the purpose of imposing a search condition on a juvenile was to deter future misconduct by the juvenile. [(*In re Tyrell J., supra,* 31 Cal.4th at p. 87.)] This is the same purpose the Supreme Court found for imposing warrantless search conditions on adult offenders. (*People v. Sanders, supra,* 31 Cal.4th at p. 333, citing *People v. Reyes* [(1998)] 19 Cal.4th [743,] 753 [80 Cal.Rptr.3d 734, 968 P.2d 445].) Therefore we cannot ascertain from *Tyrell J.* any special consideration of the juvenile justice system that would justify departure from the *Sanders* analysis." (*People v. Hester, supra,* at p. 404.)

As a corollary, we observe that in the *Tyrell J.* opinion itself the Supreme Court's primary analysis was that a juvenile probationer's right to be pro- tected from a search by an officer not knowing the juvenile was on search-

conditioned probation was based on the same "reduced expectation of privacy" analysis that applied to adult probationers. (*In re Tyrell J., supra,* 8 Cal.4th at p. 85.) The *Tyrell J.* court stated, "As a general rule, '[adult] probationers "have a reduced expectation of privacy, thereby rendering certain intrusions by governmental authorities 'reasonable' which otherwise would be invalid under traditional constitutional concepts, at least to the extent that such intrusions are necessitated by legitimate governmental demands." ' [Citations.] We believe this observation applies fully to juvenile probationers as well." (*Ibid.,* brackets in original.) Only as a secondary matter, the *Tyrell J.* court added, "Moreover, imposing a strict requirement that the searching officer must always have advance knowledge of the search condition would be inconsistent with the special needs of the juvenile probation scheme." (*Id.* at pp. 86–87.) We read this statement as not meant to distinguish juveniles from adults, but rather to buttress the court's reduced-expectation-of-privacy analysis, which no longer provides any foundation for the argument, as we have since learned from *Sanders.*

Reduced to its most basic elements, *Sanders* requires that "whether a search is reasonable must be determined based upon the circumstances known to the officer when the search is conducted." (*People v. Sanders, supra,* 31 Cal.4th at p. 334.)

Here, Joshua and his friend had only been walking down the street. Officer Verduzco, the searching officer, ordered Joshua to sit on a curb and subjected him to a patdown because he resembled an adult person wanted on a felony warrant, a suspicion no officer was able to substantiate. No one disputes that this suspicion, even when combined with Joshua's momentary detour into the apartment complex in this high-crime area, fails to justify the officers' progressive conduct culminating in the seizure of the marijuana from Joshua's pocket.

The fact that Joshua later advised he was on probation cannot justify the admission of the fruits of the officers' illegal conduct committed against Joshua, the juvenile, any more than such admission of evidence would be allowed against an adult. The juvenile court erroneously admitted evidence of the unlawfully seized marijuana.

## DISPOSITION

The judgment of the juvenile court is reversed.

Dibiaso, Acting P. J., and Harris, J., concurred.

On May 18, 2005, the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied August 17, 2005. Werdegar, J., did not participate therein. Baxter, J., was of the opinion that the petition should be granted.