Filed 4/22/13  P. v. Rogers CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br>v.<br><br>SANTONIO DESHWAN ROGERS,<br><br>        Defendant and Appellant. | A132660<br><br>(Solano County<br>Super. Ct. No. VCR208349) |

Santonio Deshwan Rogers appeals from a judgment upon a jury verdict finding him guilty of receiving stolen property (Pen. Code,[1] 496, subd. (a)) and first degree residential burglary (§ 459).  He contends that the trial court erred in denying his motion to suppress evidence.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant was charged with receiving stolen property, five counts of second degree robbery with an enhancement for personal use of a firearm, and one count of first degree residential burglary.  Prior to trial, defendant moved to suppress evidence of a gun and a stolen credit card found in a patdown search.  The court denied the motion, finding that the officer's conduct was justified for officer safety.

The evidence presented to the jury showed the following:

---

[1] All further statutory references are to the Penal Code.

## A. Receiving Stolen Property

Veera De La Mater testified that at approximately 11:30 p.m. on July 12, 2010, she was robbed at gunpoint in front of her house in Vallejo by two men. She was not able to see the man with the gun because he stayed behind her and pressed a silver gun between her eyes. The other man was African-American and he grabbed her purse. He took her wallet, GPS device, keys, and cell phone. Her wallet contained several credit cards. The police found a credit card in De La Mater's name in defendant's wallet.

## B. Burglary of 410 Goheen Circle

Maria Rapolla testified that on July 23, 2010, she lived with her family at 410 Goheen Circle in Vallejo. She left the house about 9 a.m. that morning and returned at about 12:30 p.m., because her husband called her to tell her the house had been burglarized. She found that her house had been ransacked. In examining the doors and windows of her home, she observed that the door that leads from the garage to the laundry room was broken, and that two window screens to the laundry room and kitchen windows had been removed. Numerous items were missing from the home including a 32-inch television, a digital camera, a video camera, an X-Box and several pieces of jewelry. Rapolla identified several pieces of jewelry that were found in defendant's bedroom as items taken from her home during the burglary. In investigating the burglary, the police collected fingerprints from the kitchen window. Two of the fingerprints were later found to match defendant's prints.

## C. August 5, 2010 Robbery

At about 1:00 a.m. on August 5, 2010, Conner Patterson was 15 years old and was hanging out with Cooper Wright, Angel Mora, Aman Dhindsa, and Ramon Castellblanch on Tennessee Street near some apartment complexes in Vallejo. As they approached White Pine Drive between two apartment complexes, they heard voices coming from behind them. Two men ran toward them and yelled, "Get down." Patterson thought it was a joke and kept walking, but then one of his friends said, "He has a gun," so Patterson and his friends got down on the ground. The two men approached them with their guns drawn and ordered them to empty their pockets. Patterson identified defendant

as the robber both in court and in a photo lineup. He described defendant as African-American, about 20 years old, tall, average build, and wearing a black sweatshirt with the hood pulled up and sweatpants. Patterson's friend, Aman Dhindsa, also identified defendant as the robber in court and in a photo lineup. Wright and Mora were unable to make an identification. The boys described the gun as a chrome or silver revolver. The items taken from the boys included iPods, cell phones, wallets, a car key and marijuana.

## D. The Defense

Defendant testified and denied participating in the August 5, 2010 robbery. He said he was staying with an aunt in Fairfield during the time the robbery was committed. He also denied participation in the robbery of De La Mater. As to the burglary, he acknowledged being at Rapolla's home on Goheen Circle, testifying that he went to the house with his friend, Derek Gadies, to help him collect a debt. He may have touched a window while he was there, but he did not pull off any of the window screens or go inside the house.

## E. The Search

On August 11, 2010, Officer Dustin Joseph made a routine traffic stop of Michael Addson, defendant's brother. Addson was on probation and subject to a search and seizure condition so Joseph decided to conduct a search of Addson's residence at 1801 Vervais in Vallejo. Joseph was informed that Addson and Kevin Ward were connected with a string of several armed robberies throughout the City of Vallejo.

When he arrived at the Vervais Street residence, he knocked and announced he was there to conduct a probation search and was let into the house. Joseph was in his police uniform. Upon entering the house, he immediately noticed that defendant was in the kitchen walking towards him. When defendant saw Joseph, he turned around as if to flee and walked away very quickly. Joseph ordered him to stop and to put his hands on top of his head. He then conducted a patsearch of defendant for officer safety.[2] He considered the fact that Addson and Ward were suspects in a string of armed robberies.

---

[2] Five officers accompanied Joseph on the search.

Joseph also considered that defendant "closely matched the description of the second subject that was supposed to be with Ward. He was tall, slender, [and] wearing all dark clothing."

Defendant complied with the patsearch. Defendant was wearing a pair of jeans over a pair of athletic shorts. When Joseph patted the outside of defendant's pants, he felt a gun in the right pocket of the shorts. Joseph removed the gun, a silver revolver. Joseph detained defendant because he was concerned that defendant might have another weapon. Joseph found defendant's wallet and removed his identification. He also found a credit card in the name of Veera De La Mater, one of the victims of the robbery he was investigating. The other officers then conducted a protective sweep of the residence to find out who was in the house and found a box of .38 caliber ammunition along with a few spent bullet casings in the closet of a back bedroom.

The officers then "froze" the house until a search warrant could be obtained. During the search pursuant to the warrant, the police found other evidence tying defendant to other robberies.

The trial court denied the motion to suppress evidence, finding that the patsearch of defendant was justified on the basis of officer safety, because the police were going to have to detain defendant and make sure he did not pose a risk to them while they conducted the probation search. The court further found that the seizure of the wallet was a product of inevitable discovery.

## DISCUSSION

### A.  Standard of Review

The principles governing appellate review of a trial court's denial of a motion to suppress evidence are well established. "We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment. [Citations.]" (*People v. Glaser* (1995) 11 Cal.4th 354, 362 (*Glaser*).)

4

## B. *The Legality of the Patdown Search*

The leading United States Supreme Court case on the legality of patdown searches is *Terry v. Ohio* (1967) 392 U.S. 1 (*Terry*). A *Terry* search is limited to "an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." (*Id.* at p. 29.) "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." (*Id.* at p. 27.) In justifying a patsearch, an officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." (*Id.* at p. 21.) An officer may not rely on an "inchoate and unparticularized suspicion or 'hunch' " to justify a patsearch. (*Id.* at p. 27.) The *Terry* court noted that although each of a series of acts may appear "innocent in itself," taken together they may "[warrant] further investigation." (*Id.* at p. 22; see also *People v. Souza* (1994) 9 Cal.4th 224, 233 [" '[t]he possibility of an innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct' "].) Courts should consider the " ' "totality of the circumstances—the whole picture" ' " and examine each case on the facts to establish whether a challenged detention was objectively reasonable. (*People v. Ramirez* (1996) 41 Cal.App.4th 1608, 1614.)

Relying on *Ybarra v. Illinois* (1979) 444 U.S. 85 (*Ybarra*) and *In re Joshua J.* (2005) 129 Cal.App.4th 359 (*Joshua J.*), defendant argues that the police had no justification to conduct the patdown search here. But neither *Ybarra* or *Joshua J.* involved the situation where the police were involved in conducting a probation search at a private residence. Here, the police entered to search Addson's residence where he lived with defendant and other family members. Because Addson was on probation and subject to a probation search condition, the police were at the residence with Addson's consent, and were authorized briefly to detain defendant for the purpose of identifying him and protecting the safety of those present during the search. (*Glaser, supra,* 11 Cal.4th at p. 374; *People v. Bravo* (1987) 43 Cal.3d 600, 608 [probationer has given

advance consent to a warrantless search and has waived his Fourth Amendment rights in exchange for the opportunity to avoid service of a state prison term]; see *People v. Robles* (2000) 23 Cal.4th 789, 798–799.)

As explained in *Glaser, supra,* the police may detain persons found in a private residence during the course of a search under a warrant. (*Glaser, supra,* 11 Cal.4th at p. 374.) "When, in the course of initiating a search under [a] warrant of a private residence for illegal drugs or related items, police officers encounter on the premises a person whose identity and connection to the premises are unknown and cannot immediately be determined without detaining the person, the officers may constitutionally detain him or her for the period of time required and in the manner necessary to make those determinations and to protect the safety of all present during the detention. If the person is determined to be an occupant of the home to be searched, he or she may be detained . . . for the duration of the search." (*Ibid.*) The courts have recognized that a probation search is akin to a search pursuant to a search warrant. (See *People v. Smith* (2010) 190 Cal.App.4th 572, 579 [officer safety analysis applies equally to a probation or consent search]; *People v. Rios* (2011) 193 Cal.App.4th 584, 594–595 [although officers did not have a search warrant, they were not acting randomly but were conducting a valid probation search]; see, also *People v. Robles, supra*, 23 Cal.4th at p. 799 [cohabitants have no cause to complain of searches that are reasonably related to the purposes of probation].) " 'Since the probationer waived his Fourth Amendment rights, the officers were properly able to enter the premises to search it without a warrant' [Citation.] Once properly on the premises, the officers could briefly detain others present to determine their identity." (*Rios, supra,* 193 Cal.App.4th at pp. 594–595.)

*Ybarra* and *Joshua J.* are therefore inapposite as they did not involve searches of private residences where the risk to the police is "particularly acute" because the police are on the adversary's " 'turf.' " (*Glaser, supra,* 11 Cal.4th at p.368.) " '[T]he likelihood that the occupants [of a residence] are armed or have ready accessibility to hidden weapons is conspicuously greater than in cases where, as in *Ybarra*, the public freely enters premises where legal business is transacted.' [Citation.]" (*Ibid.*) In *Ybarra,* the

police were executing a search warrant of a tavern and its bartender who was suspected of narcotics possession. (*Ybarra, supra,* 444 U.S. at p. 88.) When the officers entered the tavern, they searched all of the patrons, finding heroin on the defendant. The United States Supreme Court held that the search was unlawful because the police had no probable cause to search the patrons of the tavern where they had no reason to believe that the patrons were involved in crime or presented a threat to the officers. (*Id.* at pp. 92–93.)

Similarly in *Joshua J., supra,* 129 Cal.App.4th 359, the police conducted a patdown search of a juvenile in a public area. There, the police mistakenly thought the defendant resembled an adult person wanted on a felony warrant, and he was seen making a detour through an apartment complex in a high-crime area. (*Id.* at p. 365.) The court held that these facts failed to justify the search; nor was the search justified by the fact that the police later ascertained he was subject to a probation search condition. (*Ibid.*) The court held that the reasonableness of the search must be determined based on the circumstances known to the officer at the time the search was conducted. (*Ibid.*)

Defendant cites *People v. Sandoval* (2008) 163 Cal.App.4th 205, which also involved a probation search; but it is distinguishable on its facts. There, the police conducted a probation search of a residence where they believed narcotics were being sold. (*Id.* at p. 208.) When they arrived to conduct the search, they found the defendant, who was known to one of the officers for previous drug arrests, sitting on the steps of the residence smoking a cigarette. (*Ibid.*) The police conducted a patdown search and found a stun gun, a fixed-blade knife, and methamphetamine. (*Id.* at p. 209.) The court held that the patdown search was unlawful because the officer had no reason to believe defendant was armed and did not suspect that the defendant was engaged in any criminal activity. (*Id.* at p. 212.)

Here, by contrast, Officer Joseph, who was conducting a probation search of Addson's residence, was justified in detaining defendant for purposes of officer safety and to determine defendant's identity. Defendant's furtive movements upon seeing the police justified the patdown search for officer safety—Joseph testified that when

7

defendant saw him, he immediately turned around as if to flee and walked away very quickly. Joseph, who had announced his presence prior to being let into the home by a resident, was investigating a string of armed robberies and was accompanied by five other officers. He understandably wished to secure the premises for the safety of his team prior to conducting the probation search. Defendant's abrupt movement upon noticing the police provided a reasonable suspicion to conduct a patsearch for officer safety.[3]

As the United States Supreme Court explained in *Illinois v. Wardlow* (2000) 528 U.S. 119, 124, "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion. [Citations.] Headlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such . . . . [T]he determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior." (*Id.* at pp. 124–125.) While an individual has the right to ignore the police and go about his business when an officer lacks probable cause (*Florida v. Royer* (1983) 460 U.S. 491, 498), "unprovoked flight is simply not a mere refusal to cooperate. Flight, by its very nature, is not 'going about one's business'. . . ." (*Wardlow*, *supra*, 528 U.S. at p. 125.) Here, defendant's attempt to flee and the totality of the circumstances justified the patdown search.

Defendant also argues that Joseph was not justified in searching his wallet and that evidence of De La Mater's credit card must be suppressed. We disagree.

As we have explained, Joseph was justified in detaining defendant to determine his identity and connection to the premises. (*Glaser*, *supra*, 11 Cal.4th at p. 374.) Even if the police exceeded the scope of the permissible *Terry* search by looking through the contents of defendant's wallet, the court properly denied the motion to suppress the credit card evidence on the theory of inevitable discovery. The doctrine of inevitable discovery provides that illegally seized evidence may be used where it would have been discovered

---

[3] In light of our holding, we need not decide whether the officer's additional justification for the patdown search, namely, that defendant matched the description of one of the robbers, was warranted.

by the police through lawful means. (*People v. Robles, supra,* 23 Cal.4th at p. 800.) "The purpose of the inevitable discovery rule is to block setting aside convictions that would have been obtained without police misconduct." (*Nix v. Williams* (1984) 467 U.S. 431, 443, fn. 4.)

Here, the credit card evidence would have been inevitably discovered during a search of defendant incident to his arrest. (See, e.g., *People v. Clark* (1992) 3 Cal.4th 41, 143 [examination of contents of wallet did not exceed scope of proper booking search].) "Where the formal arrest follow[s] quickly on the heels of the challenged search of [defendant's] person, we do not believe it particularly important that the search preceded the arrest rather than vice versa." (*Rawlings v. Kentucky* (1980) 448 U.S. 98, 111.)

**DISPOSITION**

The judgment is affirmed.

_____
Rivera, J.

We concur:

_____
Ruvolo, P.J.

_____
Humes, J.

9