171 Cal.App.4th 239 (2009)
In re R.V., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent,
v.
R.V., Defendant and Appellant.
No. A121376.
Court of Appeals of California, First District, Division Three.
February 19, 2009.
*242 Stephani M. Adraktas, under appointment by the Court of Appeal, for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Martin S. Kaye and Jeffrey M. Bryant, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION
POLLAK, J.
R.V., a ward of the juvenile court, appeals from a disposition order conditioning his probation on the requirement that he wear a global positioning system (GPS) device. He argues that this condition infringes his constitutional rights to privacy and equal protection of the laws. Although the appeal is now moot, the issue is likely to recur and we therefore address the merits of the argument and affirm.

BACKGROUND
A juvenile wardship petition was filed on September 5, 2007, alleging that R.V. had received stolen property for the benefit of a criminal street gang. (Pen. Code, §§ 496, subd. (a), 186.22, subd. (d).) The minor was 16 years old at the time. According to the probation report prepared for the detention hearing, R.V.'s home was searched in connection with a burglary at Napa High School in which property had been stolen and the walls vandalized "with gang writing." The police "asked the minor if he was in possession of a stereo. He stated yes, a friend of his, `Speedy' had given it to him a couple of weeks ago. He showed it to the officer. [The officer] then inquired if he had a microscope in his bedroom closet. The minor stated he did not. *243 After receiving permission from the minor, the officer searched the minor's closet, locating the stolen microscope and other stolen items as well.... [The officer] located additional stolen items in his dresser and gang writing in [a] notebook. It was later discovered some of the drawing were distinctive and matched the vandalism on the walls of Napa High.... The minor admitted smoking marijuana to the officer and stated he did not have any in his possession; however he probably would on any other day." R.V. denied he was involved with the burglary but admitted that he was a member of the Sureño gang. He told the officer that he had shot at Norteño gang members previously "just to warn them." The detention report stated that he "has no employment, is in need of a school placement, is heavily involved in the gang culture, and smokes illegal substances. It does not appear the minor has appropriate supervision in the home or that the minor's mother can control his behaviors. The minor presents a danger to himself and those in the community. It is respectfully recommended the minor be detained by the court pending all further court proceedings with probation given discretion to release the minor on the Electronic Monitoring Program or a Home Detention Agreement." On September 10, 2007, the court ordered the minor detained.
On October 1, 2007, an amended wardship petition was filed charging R.V. with two counts of vandalism for the benefit of a criminal street gang (Pen. Code, §§ 594, subd. (a) & 186.22, subd. (d)) in addition to receiving stolen property (Pen. Code, § 496, subd. (a)). The probation report filed on October 16, 2007, states that "On September 6, 2007, the ... minor ... was released from Juvenile Hall to the custody of his mother under standard terms and conditions of a Home Detention Agreement. Almost immediately, the minor began violating these conditions. On September 9, 2007, the minor left home without permission and did not return until September 10, 2007.... On October 7, 2007, the minor left his residence without permission. His whereabouts were unknown until his family located him in Los Angeles on October 9, 2007. The minor finally returned home on October 12, 2007." On October 17, 2007, the juvenile court ordered R.V. detained. In another report, the probation officer stated that he had spoken with R.V.'s sister who "indicated she has been `dealing' with the minor's behavior because their mother does not speak English.... She said the minor would frequently leave the house and wouldn't say where he was going and at times would not return home until the next day."
On November 13, R.V. admitted one count of vandalism with the gang enhancement and the count of receiving stolen property without the gang enhancement. The remaining vandalism count was dismissed. At the November 28, 2007, disposition hearing the court again declared R.V. a ward of the *244 court, committed him to juvenile hall for 60 days, and placed him on probation subject to certain standard conditions.
A probation violation report was filed on January 30, 2008, alleging that R.V. "failed to attend school regularly and failed to obey school rules and authorities." A detention hearing was held the same day and the probation report recommended that the court give the probation officer "discretion to release the minor under a Home Detention Agreement or Electronic Monitoring...." At the same hearing, R.V. admitted to the probation violation and the court continued the matter to February 13. On February 13 a probation report was filed that described R.V. as a "moderate risk" and, at an uncontested disposition hearing, the court imposed an additional 20 days of detention and continued R.V. on probation without any new conditions.
On March 28, 2008, a probation violation report was filed alleging that R.V. had "consumed alcohol and associated with known gang members." R.V. admitted violating the terms of his probation and the court sustained the allegation. In the disposition report, the probation officer noted the minor's continued involvement with the Sureño gang and stated, "This officer has serious doubts as to the minor's ability to abide by his terms and conditions of probation. Typically these types of behaviors would be enough to warrant a camp recommendation. However, the minor was able to remain law abiding since his release from juvenile hall. This shows the minor has the ability to stay out of trouble. [¶] To test the minor's ability to remain law abiding the undersigned recommends a plan that will hold the minor accountable and demonstrate his compliance with court orders. The plan would request the minor to be detained for 44 days with credit for 22 days time served.... At the end of the juvenile hall time the probation department would request the minor be released on a [GPS] ankle monitor for 90 days. The real time supervision that the GPS can provide will illustrate to the probation department and the courts not only an accurate accounting of the minor's activities, but where and when they are occurring."
At the disposition hearing, counsel for the minor objected to the GPS condition, stating, "I think kids, when they break the law and come in front of the court, I understand they have to give up their rights, but I think that pushes that too far and he is not even deemed a high-risk juvenile offender. And if we are going to start imposing this, it should be on that category, not the moderate-risk kids and this is only on for a violation of probation today for consuming alcohol on one day.... I think the additional time is a significant enough deterrent and that the GPS monitor is completely inappropriate." The probation department replied that the minor "is involved in *245 gangs. He blatantly showed his disregard for the court, for probation, when he flashed a gang sign in court for anybody to see him. He has been to court on a prior violation and he has a new violation for which he is in for consuming alcohol. The GPS would allow him to be home and continue with his schooling; however, [it] would allow probation to monitor where he is and to ensure that he is not participating in criminal gang activity and involving himself in these types of situations...." On April 16, 2008, the juvenile court adopted the probation department's recommendation, including the condition of 90 days' GPS monitoring. The court observed, "Frankly, I think the recommendation does you a favor because it's going to be a reminder to you that every moment that you are out that you have this device on you that it keeps track of you."
R.V. timely appealed from this order.

DISCUSSION
R.V. argues that the juvenile court should not have imposed the GPS monitoring condition because it "constitutes a serious deprivation of liberty that intrudes into a constitutionally protected space, the home, and is not reasonably related to [his] offense or history, deterrence, or protection of the public." He contends that the condition infringes on his right to privacy under the Fourth Amendment to the United States Constitution and his right to equal protection under the provisions of the California and United States Constitutions.
(1) The Attorney General first argues that the appeal is moot because the minor has since been sent to a boys' camp and is no longer on probation subject to the disputed condition.[1] The minor argues that the issue should be addressed because it is likely to recur, citing In re Sheena K. (2007) 40 Cal.4th 875 [55 Cal.Rptr.3d 716, 153 P.3d 282]. In that case, the minor died while the appeal was pending but the Supreme Court retained the "case for argument and opinion in order to resolve the conflict that has arisen in the Courts of Appeal with regard to the first issue, and in view of the recurring nature of both issues." (Id. at p. 879.) "If an action involves a matter of continuing public interest and the issue is likely to recur, a court may exercise an inherent discretion to resolve that issue, even though an event occurring during its pendency would normally render the matter moot." (Liberty Mut. *246 Ins. Co. v. Fales (1973) 8 Cal.3d 712, 715-716 [106 Cal.Rptr. 21, 505 P.2d 213].) The GPS technology is relatively new. Although its use is not statutorily authorized for minors as it is for adult probationers (Pen. Code, § 1210.7 et seq.), juvenile courts nonetheless may be expected to make increasing use of such devices in their dispositional orders. At the hearing at which the monitoring condition was imposed in this case, the probation officer stated that "GPS ... is something that we are going to be implementing more, and we will do that more for high risk offenders." We therefore deem it appropriate to exercise our discretion to address the merits of the appeal.
(2) Under Welfare and Institutions Code section 730, subdivision (b) the juvenile court "may impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced." "A condition of probation will not be held invalid unless it `(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality....'" (People v. Lent (1975) 15 Cal.3d 481, 486 [124 Cal.Rptr. 905, 541 P.2d 545], abrogated by Prop. 8 on another ground as recognized in People v. Wheeler (1992) 4 Cal.4th 284, 290-292 [14 Cal.Rptr.2d 418, 841 P.2d 938]; In re Daniel R. (2006) 144 Cal.App.4th 1, 6-7 [50 Cal.Rptr.3d 179].) All three factors must be present to invalidate a condition of probation. (People v. Wardlow (1991) 227 Cal.App.3d 360, 365-366 [278 Cal.Rptr. 1].)
"An appellate court will not disturb the juvenile court's broad discretion over probation conditions absent an abuse of discretion. [Citations.] We grant this broad discretion so that the juvenile court may serve its rehabilitative function and further the legislative policies of the juvenile court system. [Citations.] [¶] In fashioning the conditions of probation, the juvenile court should consider the minor's entire social history in addition to the circumstances of the crime. [Citation.] Thus, `[a] condition of probation which is [legally] impermissible for an adult criminal defendant is not necessarily unreasonable for a juvenile receiving guidance and supervision from the juvenile court.'" (In re Walter P. (2009) 170 Cal.App.4th 95, 99 [87 Cal.Rptr.3d 668].)
"In distinguishing between the permissible exercise of discretion in probationary sentencing by the juvenile court and that allowed in `adult' court, we have advised that, `[a]lthough the goal of both types of probation is the rehabilitation of the offender, "[j]uvenile probation is not, as with an adult, an *247 act of leniency in lieu of statutory punishment...." [¶] In light of this difference, a condition of probation that would be unconstitutional or otherwise improper for an adult probationer may be permissible for a minor under the supervision of the juvenile court.'" (In re Sheena K., supra, 40 Cal.4th at p. 889.) "[J]uvenile conditions may be broader than those pertaining to adult offenders. This is because juveniles are deemed to be more in need of guidance and supervision than adults, and because a minor's constitutional rights are more circumscribed." (In re Antonio R. (2000) 78 Cal.App.4th 937, 941 [93 Cal.Rptr.2d 212].)
(3) GPS monitoring is expressly authorized by statute for adult probationers (Pen. Code, § 1210.7 et seq.), as well as for registered sex offenders (Pen. Code, § 1202.8) and parolees (Pen. Code, § 3010). If GPS monitoring is a permissible condition for adult probation, a fortiori the condition is permissible for juvenile probation since broader conditions may be imposed on juveniles. (In re Antonio R., supra, 78 Cal.App.4th 937.)
Given the history of R.V.'s violations of the Penal Code and of the conditions of his probation, the GPS monitoring condition was both reasonably related to his past behavior and likely to deter future criminality. Among other things, the GPS device would have allowed the probation department to determine if R.V. was on school property outside of regular school hours, when he should not have been there as he was when he committed his initial offense, or, in light of his history of truancy, off campus when he should have been at school. It would have allowed the probation officer to determine whether R.V. was observing the 9:00 p.m. to 6:00 a.m. curfew imposed by the court and to locate R.V. if he again absconded. The GPS device also would have provided a constant reminder to R.V. that he was on probation and that his activities were being monitored, hopefully providing an additional incentive to avoid further violations of the criminal laws or of his conditions of probation. (Cf. In re Jaime P. (2006) 40 Cal.4th 128, 137 [51 Cal.Rptr.3d 430, 146 P.3d 965] ["the very existence of a probation search condition, whether for adults or juveniles, should amply deter further criminal acts..."].)
(4) R.V. complains that the GPS monitoring would not have provided the type of personal supervision that would be beneficial to a minor and that "GPS surveillance is a poor substitute for in person contact with a probation officer as it does not allow for accurate assessment of the minor's activities and progress on probation." However, the GPS device is but a single supervisory tool used in an attempt to achieve the objectives of probation. There is no requirement that it be independently sufficient to accomplish *248 those objectives or to oversee a minor's behavior. In enacting the provisions of the Penal Code authorizing GPS monitoring for adult probationers, the Legislature found "that continuous electronic monitoring has proven to be an effective risk management tool for supervising high-risk persons on probation who are likely to reoffend where prevention and knowledge of their whereabouts is a high priority for maintaining public safety." (Pen. Code, § 1210.7, subd. (e).) Whatever the shortcomings of GPS may be, its use is permissible so long as it satisfies the criteria specified in People v. Lent, supra, 15 Cal.3d 481.
(5) As for R.V.'s constitutional objections, as noted above, "[j]uveniles are deemed to be more in need of guidance and supervision than adults, and their constitutional rights are more circumscribed. [Citation.] Further, when the state asserts jurisdiction over a minor, it stands in the shoes of the parents. A parent may curtail a child's exercise of constitutional rights because a parent's own constitutionally protected `"`liberty'"' includes the right to `"`bring up children'"' and to `"`direct the upbringing and education of children.'"'" (In re Antonio C. (2000) 83 Cal.App.4th 1029, 1033-1034 [100 Cal.Rptr.2d 218].) Whether or not monitoring one's movements inside or outside the home by means of a GPS device constitutes a search for purposes of the Fourth Amendment, as R.V. contends (cf., e.g., Kyllo v. United States (2001) 533 U.S. 27 [150 L.Ed.2d 94, 121 S.Ct. 2038] [thermal imaging]; United States v. Karo (1984) 468 U.S. 705 [82 L.Ed.2d 530, 104 S.Ct. 3296] [monitoring beeper in private residence]), "the juvenile court may impose probation conditions that infringe on constitutional rights if the conditions are tailored to meet the needs of the minor." (In re Antonio C., supra, 83 Cal.App.4th at p. 1034.) Even if the monitoring involves a "search," another standard condition of R.V.'s probation, to which no challenge is directed, is that he consent to searches of his person or residence without a warrant or reasonable cause. While R.V. is entitled to retain "some residual expectation of privacy," the GPS monitoring is not "arbitrary, capricious or harassing." (In re Jaime P., supra, 40 Cal.4th at pp. 136-137.) The GPS requirement, in conjunction with the other conditions of R.V.'s probation, was reasonably designed to monitor his whereabouts to ensure that he attend school, remain off school premises when he should not be there, observe the court-imposed curfew and not engage in other misconduct that might be traced to him if his whereabouts are known. Moreover, the very reasons R.V. contends the monitoring is ineffective undermine his contention that the monitoring is unduly intrusive: the GPS would do no more than indicate his location at any particular time; it would not intrude on the privacy of his conversations at home or elsewhere.
*249 (6) Nor would the imposition of the monitoring condition deny R.V. equal protection of the law because other similarly situated moderate risk offenders are not required to wear a GPS device. The state has adopted no classification that affects similarly situated groups in an unequal manner. (See Cooley v. Superior Court (2002) 29 Cal.4th 228, 253 [127 Cal.Rptr.2d 177, 57 P.3d 654]; In re Ricky H. (1981) 30 Cal.3d 176, 190 [178 Cal.Rptr. 324, 636 P.2d 13].) The Welfare and Institutions Code contemplates that the court will give individualized consideration to the needs and circumstances of each "[m]inor[] under the jurisdiction of the juvenile court as a consequence of delinquent conduct." (Welf. & Inst. Code, § 202, subd. (b); see id., § 725.5; In re William M. (1970) 3 Cal.3d 16, 31 [89 Cal.Rptr. 33, 473 P.2d 737].) The parties debate whether R.V. should be considered a high risk or, as he was characterized in the trial court, moderate risk offender. The characterization has little significance; it is sufficient that R.V.'s history of misconduct and violation of probation conditions made it reasonable for the court to conclude that there was a significant risk that he would reoffend and that close monitoring of his behavior for a limited period was appropriate to his circumstances. Monitoring R.V.'s movements with a GPS device would have permitted the probation officer to more effectively scrutinize R.V.'s behavior, reduced the likelihood of further misconduct, and facilitated the determination of whether more stringent measures were called for. There was no denial of equal protection simply because other judges dealing with other minors in other circumstances may not feel that GPS monitoring is necessary or appropriate, if it is even available in the particular locality. (See, e.g., In re Kacy S. (1998) 68 Cal.App.4th 704, 711-712 [80 Cal.Rptr.2d 432] [rejecting argument that statute authorizing juvenile court to require urine testing violated equal protection because "`an individual in another court or in another county whose offense was [similar to his] may not be required to submit to urine testing depending on the whim of the particular court.'" The court would not "speculate as this contention invites us to do that juvenile courts in different counties will exceed their discretion in applying or declining to" require urine testing].)
(7) The court imposed the GPS monitoring condition as a less harsh alternative to an out-of-home placement at a juvenile camp, which certainly would have been within the court's authority. (Welf. & Inst. Code, § 730, subd. (a); In re Ronny P. (2004) 117 Cal.App.4th 1204, 1207-1208 [12 Cal.Rptr.3d 675] [commitment to youth camp within court's discretion in making dispositional orders].) In doing so, we have no doubt that the court did not abuse its discretion, impermissibly invade R.V.'s right to privacy, or deny him equal protection of the law.

*250 DISPOSITION
The judgment is affirmed.
McGuiness, P. J., and Jenkins, J., concurred.
NOTES
[1] The Attorney General requests that we take judicial notice of various reports that were filed after the April 16, 2008, dispositional order from which the minor appeals, which are relevant to his argument that the appeal is moot. We deferred consideration of the request until consideration of the appeal on the merits, and now grant the request for judicial notice.