Filed 12/18/13  In re J.O. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re J.O., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>J.O.,<br><br>    Defendant and Appellant. | A137895<br><br>(Contra Costa County<br>Super. Ct. No. J0300300) |

After minor J.O. pleaded no contest to allegations that he committed felony grand theft, misdemeanor assault by force likely to produce great bodily injury, and misdemeanor battery, the juvenile court placed him on probation in the custody of the probation department.  In addition to many standard terms and conditions of probation, the court also imposed gang-related probation conditions.  J.O. challenges the gang-related conditions, contending the court abused its discretion in imposing them because there was insufficient evidence of his gang involvement.  We disagree, and we affirm.

1

# BACKGROUND[1]

On October 28, 2012, 17-year-old J.O. and a companion were at the Richmond BART station when they spotted a woman exiting the station. After following her across the street and down the block, J.O. approached her and attempted to grab her cell phone. When she resisted, he threw her to the ground, snatched the phone, and ran off laughing. The woman contacted her husband and, using a GPS application, they tracked her phone to the Hilltop Mall. They went to the mall, where the woman spotted J.O., recognizing him as the assailant. When they confronted him, he took off running. The victim's husband tackled him from behind, and while J.O. was pinned down, he punched and kicked the husband in the head and bit him on his thigh. Mall security arrived and detained J.O. until the police responded, whereupon J.O. was arrested and detained at juvenile hall. J.O. later admitted that he had smoked marijuana before the incident and was still under the influence of it at the time of the robbery.[2]

On October 30, 2012, the district attorney filed a Welfare and Institutions Code section 602 petition alleging two felony counts against J.O.: second degree robbery (count 1; Pen. Code, § 211/212.5, subd. (c)), and assault by force likely to produce great bodily injury (count 2; Pen. Code, § 245, subd. (a)(1)).

On November 16, 2012, pursuant to a negotiated disposition, the district attorney amended the petition to add three additional counts: felony grand theft (count 3; Pen. Code, § 487); misdemeanor assault by force likely to produce great bodily injury (count 4; Pen. Code, § 245, subd. (a)(1)); and misdemeanor battery (count 5; Pen. Code,

---

[1] Because J.O. pleaded no contest prior to an evidentiary hearing, we derive the background facts from the reports of the police and probation departments.

[2] At the time of his arrest, J.O. was a Welfare and Institutions Code section 300 dependent of Contra Costa County. The Department of Children and Family Services had removed him from his parents' care in 2003 due to physical abuse inflicted by his father. He lived with an aunt until 2007, when his behavior escalated to the point that she was unable to care for him. He was placed in a group home in Davis and later transferred to a home in Richmond, where he resided at the time of his arrest. Although J.O. reportedly saw his father weekly, neither his mother nor his father was actively involved in his case plan or made any reunification efforts.

§ 242, subd. (a)).  J.O. pleaded no contest to counts 3 through 5, the court sustained those counts, and the first two counts were dismissed.

On December 5, 2012, the probation department submitted its recommendation report to the court.  It advised that J.O. had a prior referral for attempted robbery, possession of a weapon on school grounds, and brandishing a replica firearm, although no petition was filed after that arrest.  Additionally, the "Juvenile Assessment and Intervention System" had classified J.O. as having a high risk level for reoffending.  He was on "level three" behavior status at juvenile hall, where he had been detained since his arrest.  According to hall staff, he often refused to go to school and would not follow directions.  He had also received consequences such as room restrictions and "meal trays" for instances of talking on silence, not following directions, refusing to attend school, school kick-outs, and staff manipulations.  According to the probation department, J.O. would benefit from a limit setting supervision strategy.

As particularly relevant here, the probation department also informed the court: "J.O. has known most of his friends for two years and believes some of them are either on probation or in trouble with the law, but believes none of his friends associate with any gang.  J.O. denied any gang association of his own;  however, Juvenile Hall records indicate the minor claims a Central Richmond gang membership."  And while in juvenile hall pending disposition of this case, J.O. was placed in "Conflict Resolution Needed" status after an altercation with another resident who said something negative about "Central Richmond."

In terms of disposition, the probation department recommended placement in a home or institution.  It also recommended, among other probation conditions, four prohibitions against gang-related activities.  According to the department, those restrictions were necessary "to discourage further relationship or association with gang activities, gang members, negative influences that may jeopardize his rehabilitation, and ensure the protection of the community."

On December 5, the matter came on for disposition.  At the outset of the hearing, counsel for J.O. indicated he would submit on the placement recommendation, but he

objected to the gang-related probation conditions.  As he explained it, "I don't think that the offense, underlying offense in the petition involved gang activity at all.  There are no gang allegations made in the petition and apparently it was an alleged robbery charged initially.  [¶] There was a co-responsible but there doesn't seem to be anything to indicate it was gang related at all, and J.O. has denied any gang association or membership."  The deputy district attorney responded that "[t]he disposition report notes that in Juvenile Hall the minor has claimed Central Richmond gang affiliation.  [¶] Accordingly, it is appropriate in rehabilitation to impose the terms that the probation department has laid out.  We are in juvenile court and the issue in juvenile court is the rehabilitation of the minor.  The Court may impose rehabilitative probation conditions so long as the Court finds that they are appropriate to rehabilitate the minor."

After discussion of additional probation conditions that are not at issue here, the court adjudged J.O. a ward of the court with no termination date and terminated his dependency wardship.  He was ordered detained in juvenile hall pending placement by the probation department in a court-approved home or institution, with a likely date of returning home of December 5, 2013.  The court also imposed numerous terms and conditions of probation, including the gang-related conditions disputed here.  These were detailed in a "Supplemental Minute Order Gang Conditions" as follows:

"You shall not participate in any gang activity and shall not visit or remain in any specific location known to you to be, or that the Probation Officer informs you to be, an area of gang-related activity.

"You shall not knowingly possess, display or wear any insignia, clothing, logos, emblems, badges or buttons, or display any gang signs or gestures that you know to be, or that the Probation Officer informs you to be, gang related.

"You shall not obtain any new tattoos that you know to be, or that the Probation Officer informs you to be, gang related.

"You shall not post, display or transmit on or through your cell phone any symbols or information that you know to be, or the Probation Officer informs you to be, gang related.

4

"For the purposes of these probation conditions, the words 'gang' and 'gang-related' means [*sic*] a 'criminal street gang' as defined in Penal Code Section 186.22 subdivision (f)."

J.O. was ultimately placed at the Children's Home of Stockton, and this timely appeal followed.

## DISCUSSION

J.O. asserts one argument on appeal: that the court erred in imposing the gang-related probation conditions. This is so, he contends, because his offenses were not related to gang activities and there was insufficient evidence establishing that he associated with a gang. We review a juvenile court's imposition of probation conditions for an abuse of discretion. (*People v. Welch* (1993) 5 Cal.4th 228, 234; *In re Christopher M.* (2005) 127 Cal.App.4th 684, 692.) In the absence of manifest abuse, we must affirm. (*Id.* at p. 692.) We conclude there was no manifest abuse here.

Pursuant to Welfare and Institutions Code section 730, subdivision (b), when a juvenile court places a minor in the custody of the probation department, it "may impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced." " 'A condition of probation will not be held invalid unless it "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality." ' " (*In re R.V.* (2009) 171 Cal.App.4th 239, 246; see also *In re Babak S.* (1993) 18 Cal.App.4th 1077, 1084 [" 'a condition of probation which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality' "]; *In re Bernardino S.* (1992) 4 Cal.App.4th 613, 622 ["A valid condition must either bear a relationship to the crime of which the offender was convicted or be reasonably related to the avoidance of future criminality."].)

The court *In re Laylah K.* (1991) 229 Cal.App.3d 1496 (*Laylah K.*) considered an argument similar to that made by J.O., and we find the holding instructive here. In

5

*Laylah K.*, two minor sisters and two other girls (including one gang member) accosted a woman walking her dog, demanding to know why she was wearing red clothing, shouting obscenities, and assaulting her. (*Id.* at p. 1499.) One sister admitted allegations of fighting or challenging to fight in a public place and providing false identification to a police officer, while the other admitted using offensive words likely to incite violence. The juvenile court declared them wards of the court, placed them on probation, and ordered them to comply with certain terms and conditions, including a prohibition against associating with known members of a particular gang. (*Ibid.*)

On appeal, the sisters argued that the condition was not reasonably related to their crimes or their rehabilitation. (*Laylah K., supra,* 229 Cal.App.3d at p. 1500.) According to them, there was no evidence they were members of a gang. The only evidence suggesting that their offenses had a gang connection was, they claimed, the reference to the victim's red clothing, but the statement by the probation department that this indicated "gang overtones" was merely speculative, as was an aunt's representation that they were associating with gangs. (*Ibid*.) The Court of Appeal rejected their claims. (*Id.* at pp. 1501–1503.) It noted that the sisters' history reflected "increasingly undirected behavior": they were runaways and beyond their parents' control, and one sister had stopped attending school because of pressure there to join a gang, while the other sister was often truant and frequently got into fights when she did attend school. (*Id.* at p. 1501.) According to the court, they were both "clearly in danger of succumbing to gang pressures." And, the court continued, where it was concerned that the minor was in danger of falling under the influence of a street gang, "an order directing a minor to refrain from gang association is a reasonable preventive measure in avoiding future criminality and setting the minor on a productive course." (*Id.* at p. 1502.)

Here, as in *Laylah K.*, the record demonstrates that the gang-related probation conditions were a reasonable preventive measure aimed at avoiding future criminality. Most obviously, according to J.O.'s juvenile hall records, he claimed membership in the Central Richmond gang. While that alone would support imposition of the disputed conditions, there was more evidence suggesting that J.O. had a gang affiliation: while in

6

the hall, he was involved in a conflict with another inmate who made negative comments about "Central Richmond."

Moreover, the primary goal of juvenile probation is rehabilitation of the minor. (*In re Tyrell J.* (1994) 8 Cal.4th 68, 81, overruled on other grounds in *In re Jaime P.* (2006) 40 Cal.4th 128.)  The probation report classified J.O. as having a high risk level for reoffending.  He did not appear to be remorseful for his actions, minimizing his involvement in the offense and attempting to place the blame on his accomplice.  As described by the probation officer, "The minor's actions in the offense suggest a lack of strong decision making skills and it appears the minor does not fully understand the consequences for his behavior nor accept responsibility for his actions as demonstrated by minimizing involvement."  And, the incident resulting in the petition was not J.O.'s first contact with the law.  In February 2012—only six months before the cell phone theft—J.O. was arrested for brandishing a firearm, possession of a weapon on school grounds, and attempted robbery.  His next offense—the theft of the cell phone—involved violence directed at both the initial victim and her husband.  That this second incident involved violence suggests an escalation in criminality.  Given these circumstances, the juvenile court could reasonably have concluded that the gang restrictions were necessary to prevent future criminality and enhance J.O.'s rehabilitation.

J.O. seeks to distinguish *Laylah K.*, claiming it "has barely any semblance to this case and cannot be seen as governing the result here."  This is so, he argues, because there the minors' "criminal conduct was overtly gang related and their social life was heavily infused with associations to members of the Crips, a well established criminal street gang."  J.O. is wrong for two reasons.  First, the evidence of gang association here was arguably stronger than in *Laylah K.*  According to the probation report, J.O. claimed membership in a street gang, while in *Laylah K.*, the minors did not purport to be gang members but were merely associating with other gang members.

Second, to be sure, there are cases in which the evidence of gang association that justified imposition of the no-gang-contact probation condition was more substantial. (See, e.g., *In re Shaun R.* (2010) 188 Cal.App.4th 1129, 1134-1135 [minor was wearing

gang clothing at the time of his arrest, had gang references on his cell phone, had two tattoos, and told the police that he had been "norte" for two years]; *People v. Lopez* (1998) 66 Cal.App.4th 615, 622 [defendant was a self-admitted gang member, claimed Norteño, and had two "XIV" tattoos].)  But this does not, as J.O. would have it, mean that "a far higher evidentiary showing of gang involvement or association is required to sustain the imposition of gang probation conditions."  Rather, as noted above, a probation condition may be imposed where it relates to the offense committed or is reasonably related to the prevention of future criminality.  (*In re R.V., supra,* 171 Cal.App.4th at p. 246; *In re Babak, supra,* 18 Cal.App.4th at p. 1084.)  And given the circumstances here, the juvenile court was within its discretion in concluding that the gang restrictions satisfied these criteria.

J.O. submits that his case is "far closer" to *People v. Brandão* (2012) 210 Cal.App.4th 568 (*Brandão*).  We disagree.  In *Brandão*, defendant was arrested after a police officer determined that the registration of the car he was driving was expired despite that the car bore a seemingly valid registration sticker.  Defendant was ultimately charged with displaying the invalid sticker, operating an unregistered vehicle, possession of marijuana and methamphetamines, and violating probation.  (*Id.* at p. 571.)  He was granted probation, a condition of which required that he "[n]ot associate with any individuals you know or are told by the Probation Officer to be gang members . . . ." (*Ibid*.)

On appeal, defendant claimed that the trial court erred in imposing the no-gang-contact probation condition.  (*Brandão, supra,* 210 Cal.App.4th at p. 570.)  The Court of Appeal agreed.  It rejected the trial court's justification that imposing the condition would help forestall the risk of future criminal behavior, stating, "What the law authorizes, however, are probation conditions that, if not tied to the crime or crimes adjudicated in the current proceeding and not intended to restrict noncriminal behavior, are conditions " '*reasonably* related to . . . future criminality.' "  [Citation.]  When a probation condition 'lack[s] any reasonable nexus to . . . present or future criminality' [citation], there is 'no reasonable basis for sustaining [the] condition' [citation]."  (*Id.* at

8

p. 574.)  The court further explained:  "Not every probation condition bearing a remote, attenuated, tangential, or diaphanous connection to future criminal conduct can be considered reasonable.  Because it is undisputed that the no-gang-contact probation condition imposed here involves noncriminal conduct and has no connection to the crime of which defendant was convicted, we must decide whether the condition is *reasonably* related to a risk that defendant will reoffend."  (*Ibid.*)  It then found no ties between defendant and any criminal street gang, no such ties involving any member of his family, and no criminal history showing or strongly suggesting a gang tie.  (*Id.* at p. 576.)  As such, it concluded the no-gang-contact condition was erroneously imposed.  (*Ibid.*)

J.O. urges us to follow *Brandão*, contending that the probation report's "oblique remark" that, according to his juvenile hall records, he claimed membership in the Central Richmond gang was the only "attenuated statement" distinguishing his case from *Brandão*.  That one factor, he argues, is "insufficient to support the probation conditions as there is no substantive evidence that J.O. ever engaged in criminal activity through association with a gang . . . .  Clearly, there is no nexus between this allege[d] gang affiliation and J.O.'s adjudicated conduct, and the single reference is too thin a reed on which to predicate future criminality."  His argument is unavailing.

As a preliminary matter, *Brandão* involved an adult defendant, not a juvenile.  This distinction is significant because the court is afforded greater leeway in imposing probation conditions on minors than adults.  (*In re Todd L.* (1980) 113 Cal.App.3d 14, 19 ["special purposes of the Juvenile Court Law" can render a probation condition that would be impermissible for an adult reasonable for a juvenile].)  As the California Supreme Court has explained:  "The juvenile court's broad discretion to fashion appropriate conditions of probation is distinguishable from that exercised by an adult court when sentencing an adult offender to probation.  Although the goal of both types of probation is the rehabilitation of the offender, '[j]uvenile probation is not, as with an adult, an act of leniency in lieu of statutory punishment; it is an ingredient of a final order for the minor's reformation and rehabilitation.' [Citation.] . . . [¶] In light of this difference, a condition of probation that would be unconstitutional or otherwise improper

9

for an adult probationer may be permissible for a minor under the supervision of the juvenile court. [Citations.] ' "Even conditions which infringe on constitutional rights may not be invalid if tailored specifically to meet the needs of the juvenile [citation]." ' [Citations.]" (*In re Tyrell J., supra,* 8 Cal.4th at pp. 81–82.)

*Brandão* is also distinguishable in that there was no evidence whatsoever of any gang involvement. Here, J.O.'s juvenile hall record indicated that he claimed membership in the Central Richmond gang, and he was involved in an altercation with another resident who insulted "Central Richmond." While J.O. submits this is "too thin a reed on which to predicate future criminality," the juvenile court was within its discretion to disagree.

Lastly, J.O. argues there was no evidence establishing that "Central Richmond" was a criminal street gang. The only reasonable inference of the probation department's notation that J.O. claimed membership in "Central Richmond" and that he was involved in a conflict when another individual spoke negatively about "Central Richmond" was that "Central Richmond" was a criminal street gang as defined in Penal Code section 186.22, subdivision (f). No other evidence was needed.

## DISPOSITION

The judgment is affirmed.

_____<br>Richman, J.

We concur:

_____<br>
Kline, P.J.

_____<br>
Haerle, J.