Filed 12/30/13  In re L.F. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re L.F., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>L.F.,<br><br>        Defendant and Appellant. | A138398<br><br>(Contra Costa County<br>Super. Ct. No. J1200726) |

L.F. appeals from a dispositional order by the juvenile court following his no contest plea to assault by force likely to produce great bodily injury (Pen. Code, § 245(a)(1)),[1] receiving stolen property (§ 496(a)) and a misdemeanor charge of street terrorism (§ 186.22(a)). The court declared wardship, ordered defendant removed from his parent's home and committed him to 18 months at the Youth Offender Treatment Program, along with imposing other terms and conditions of probation.  The minor's appellate counsel has raised no issues and asks this court for an independent review of the record to determine whether there are any issues that would, if resolved favorably to the minor, result in reversal or modification of the orders.  (*People v. Kelly* (2006) 40 Cal.4th 106; *People v. Wende* (1979) 25 Cal.3d 436.)  The minor was notified of his right to file a supplemental brief, but has not done so.  Upon independent review of the record, we

---

[1] All further statutory references are to the Penal Code unless otherwise noted.

1

conclude no arguable issues are presented for review, and affirm the juvenile court's order.

## BACKGROUND

We recite only the facts relevant to our review in light of defendant's no contest plea. The allegations in the Welfare and Institutions Code section 602 petition arise from two incidents. The first, on January 13, 2012, occurred an AC transit bus. Defendant and four other males boarded the bus, went to the rear and attacked two other juveniles, including dragging them off the bus, beating them up and taking personal property. Defendant and the others in the group were "validated" as members of a local street gang, "Swerve Team," and during the assault, audio recording picked up yells of "Swerve" and "Swerve Team." The second incident, on May 10, 2013, involved an armed robbery of a driver parked in front of his residence. Defendant approached the car, asked the time, then opened the passenger door. Another male opened the driver's door, held a gun to the driver's head and told him to close his eyes. Defendant then took the driver's wallet; either defendant or the other male also took the driver's cell phone.

As a result of the second incident, the amended section 602 petition included five counts: counts 1 and 2, assault by force likely to produce great bodily injury (§ 245, subd. (a)(1)); count 3, second degree robbery (§§ 211, 212.5, subd. (c)); count 4, street terrorism (§ 186.22, subd. (a)); and count (5) receiving stolen property (§ 496 subd. (a)). A gang enhancement (§ 186.22, subd. (b)(1)) was alleged as to counts 1 through 3 and 5. As to count 3, it was alleged defendant used a firearm (§ 12022.53, subds. (b), (e)(1)). As to counts 4 and 5, it was alleged defendant was armed with a firearm (§ 122022, subd. (a)(1)).

On February 7, 2013, defendant entered into a negotiated disposition. The petition was amended to include an additional count, count 6, of misdemeanor street terrorism (§ 186.22, subd. (a)). After full advisement as to the rights he would be waiving, defendant then pleaded no contest to counts 1, 5 and 6. The remaining counts and all enhancements were dismissed. The trial court, having queried defendant, found his plea was knowingly, intelligently, and voluntarily made.

2

A contested dispositional hearing was held on March 25, 2013. Defendant had told the probation officer the first incident was triggered by the victims, although he admitted he might have kicked one of the victims after he had fallen to the ground. He denied being part of the group of assailants. As to the second incident, he denied being involved in a robbery and claimed he had been offered a ride home by the driver. He also denied being a member of any gang. He claimed he had first used marijuana only a month earlier, and denied having been detained and found with marijuana a year earlier and then telling a probation officer he used a couple of times a month. In short, defendant told the officer he did not think he had done anything wrong, that he had only tried to defend his friend, and that he had pleaded no contest on his attorney's advice since he was facing 15 years on the charges. Defendant said he enjoys sports, and hoped to become a professional football player. His academic record was poor, although he had sufficient credits to graduate from high school on time. He had recently enrolled in Contra Costa College and in Adult School. He thought that, "at most," he should be placed on probation and released to "continue on with his life."

His mother described defendant as a "good kid" who had some behavioral issues earlier in high school. She thought he had gotten involved in a fight that got out of hand, was sure he had not been involved in a robbery, and did not believe he was a gang member, although acknowledged some of his friends might be.

The probation officer assessed defendant as having a moderate risk level for re-offense. Given the separate acts of violent and serious criminal behavior, his identification as a gang member, his poor school performance, his history of substance abuse, and, particularly, his unwillingness to take any responsibility for his conduct, the probation officer concluded defendant needed to be held accountable for his conduct, be educated as to personal costs associated with gang membership, and to address the causes of such serious criminal behavior. He concluded DJJ placement was appropriate. During the probation officer's testimony at the hearing, defendant made faces and was admonished by the court.

3

Defendant called two witnesses. Gonzalo Rucobo testified defendant had been participating in Bay Area Peace Keepers, a violence intervention program, since July 2012. Defendant had actually reached out to the program on his own, after seeing its work in connection with the high school sports program. Since then, Rucobo often saw defendant daily, and believed defendant was at that point doing well in school. He did not observe defendant associating with gang members, and did not think Swerve was a typical gang, but a group of kids who had lost a friend and started using the "word." He believed defendant had some sport scholarship opportunities, and he and defendant had talked about defendant making a fresh start. Valerie Estrada also testified about defendant's interaction with Bay Area Peace Keepers, including his attendance at life skills class. He had perfect attendance, and she saw him every day. Defendant's mother also testified as to defendant's efforts to turn around his schooling.

Defense counsel urged that defendant be placed on probation and suggested electronic monitoring. The prosecution maintained the recommended disposition was justified. While the prosecutor was arguing, the trial court again admonished defendant when he began shaking his head. Defendant claimed he just "moved his head." The court did not "accept that" assertion and stated defendant was clearly "disagree[ing]" with the prosecutor.

The court stated it was faced with a difficult decision because defendant had no prior criminal record, but had engaged in very serious conduct. It found defendant had substantial rehabilitative needs. The court was not only concerned by the fact defendant did not think he had done anything wrong, but with other aspects of his behavior, including lying about prior marijuana use. In fact, the court found defendant's story about the attack on the bus "completely ridiculous," stating no one "in the universe" would believe it. The court found defendant's dissembling "almost incomprehensible." Nevertheless, in light of defendant's efforts during the preceding six months, the court chose not to commit him to a DJJ facility and instead committed him to the county Youthful Offender Treatment Program with a review set for 18 months. If at that time, defendant had done a good job in the program and not received any write-ups or

4

infractions, he would be released for 90 days on electronic monitoring and then on probation subject to numerous other terms and conditions, including a curfew and search clause. The court calculated the maximum period of confinement as 60 months. Defendant filed a timely notice of appeal from the March 25, 2013, dispositional order.

## DISCUSSION

Upon review of the record, we discern no arguable issues. The minor was ably represented by counsel at all times during the juvenile proceedings. He received all necessary advisements and admonishments in connection with his change of plea. He had a full and fair opportunity to present his case as to disposition, and no dispositional errors were made. The juvenile court acted well within its discretion in committing defendant to the Youthful Offender Treatment Program for a minimum of 18 months, and also in specifying a 60-month (five-year) maximum term of confinement. (See *In re Angela M.* (2003) 111 Cal.App.4th 1392, 1396 [juvenile court's commitment decision is reviewed for abuse of discretion, with all reasonable inferences indulged to support its decision].) It also acted within its discretion in imposing lawful conditions of probation (see *In re R.V.* (2009) 171 Cal.App.4th 239, 246–247 [discussing scope of juvenile court's discretion in imposing probation conditions], prohibiting the use and possession of firearms until the age of 30 (§ 29820, subd. (b)), and issuing stay away orders as to the victims and co-perpetrators.

## DISPOSITION

The juvenile court's dispositional order is affirmed.

_____
Banke, J.

We concur:


_____
Dondero, Acting P. J.


_____
Becton, J.[*]

[*] Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

6